PETTY et al. v. CITY OF SAN ANTONIO.*
(No. 5513.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 24, 1915. Rehearing Denied Dec. 22, 1915.)

1. NAVIGABLE WATERS ☞36—TITLE TO BED OF STREAM—FINDINGS.

In an action by riparian owners against a city for injunction, and damages incurred in the abatement of structures alleged to obstruct the flow of the stream, the jury's finding that the river was of an average width of 30 feet had the same effect as a finding that the river was navigable, so far as the title to riparian lands was concerned.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–200; Dec. Dig. ☞ 36.]

2. NAVIGABLE WATERS ☞43—WATER COURSES—RIGHTS TO BED OF STREAM—"PURPRESTURE."

Where riparian owners placed fillings and buildings in the bed of a navigable river, which is owned by the state, they created a purpresture, and were liable to judgment restraining them from continuing the trespass and authorizing the removal of the obstructions, whether or not the flow of the river was so obstructed as to cause overflows dangerous to the public.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265; Dec. Dig. ☞43.

For other definitions, see Words and Phrases, First and Second Series, Purpresture.]

3. APPEAL AND ERROR ☞1122—SUPPORT OF JUDGMENT BELOW—MAKING FINDINGS.

Where there is evidence to support a finding that will support the judgment below and submission of the issue was not requested, the Court of Appeals must make such finding.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4420; Dec. Dig. ☞1122.]

4. NAVIGABLE WATERS ☞43—OBSTRUCTION OF STREAM—ABATEMENT—"DEPRIVATION."

Where a riparian proprietor filled in and built upon the bed of a stream, so as to constitute a nuisance by creating a danger of overflow through inadequate outlet for high water, such nuisance was open to abatement by the city, whether the river was navigable or not, since preventing the owner from using his property so as to injure others is not a deprivation to him of such property or its use.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265; Dec. Dig. ☞43.

For other definitions, see Words and Phrases, First and Second Series, Deprivation.]

5. NAVIGABLE WATERS ☞43—OBSTRUCTION OF STREAM—ABATEMENT — RIGHT TO DAMAGES.

Where defendant city tore down plaintiff riparian owners' structures in the bed of a stream constituting a dangerous obstruction thereof in time of flood, but did not take the material or destroy it, an emergency existing in the near prospect of a flood justifying the summary action, plaintiffs could not recover damages for the removal of the obstructions, since no compensation can be required when a nuisance is summarily abated in an emergency justifying summary steps, while the regulation of the use of property or the destruction thereof under a proper exercise of the police power is not a taking of property without making compensation within the Constitution.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 104, 256–265; Dec. Dig. ☞43.]

6. TRIAL ☞251—REFUSAL OF INSTRUCTION.

Where the case was submitted on special issues, the court did not err in refusing a charge not drawn so as to be applicable to any particular issue, but calling for a general verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☞251.]

7. WATERS AND WATER COURSES ☞58—OBSTRUCTION—RIGHT TO ABATE.

It is not the law that no relief can be had by the public, against an obstruction to the flow of a river on the ground that it is a nuisance dangerous to life if overflows would occur in the absence of such obstruction, since it might greatly increase the amount of the overflow, and the danger and destruction caused thereby.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 49; Dec. Dig. ☞ 58.]

8. TRIAL ☞251—INSTRUCTION—COMFORMITY TO PLEADINGS.

A charge is properly refused, unless pleadings justify it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☞251.]

9. APPEAL AND ERROR ☞1062—HARMLESS ERROR—SUBMISSION OF SPECIAL ISSUES—FORM.

In an action by riparian owners against a city to enjoin the further, and recover damages for the past, removal of alleged obstructions placed in the bed of a stream, where the jury found that the width of the river was 30 feet on the average, which, so far as fixing the boundaries of the stream was concerned, was equivalent to a finding that it was navigable, any error in the form of questions submitting the issue of navigability was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☞ 1062.]

10. APPEAL AND ERROR ☞1062—HARMLESS ERROR—SPECIAL ISSUES—FORM.

In an action by riparian proprietors to enjoin a city from removing structures in a bed of a river, where the city made out a case of nuisance whether plaintiffs' line extended to the center of the stream or only to the water line, any error in the form of questions submitting the issue of the navigability of the stream was harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☞ 1062.]

11. APPEAL AND ERROR ☞231—RESERVATION OF GROUNDS OF REVIEW—OBJECTION TO INSTRUCTION.

In a suit by riparian owners to enjoin a city from removing structures placed in the bed of a river, an objection made to the charge of the court that the definitions of the terms "channel" and "bed" were incorrect was too general to predicate error upon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1299, 1352; Dec. Dig. ☞ 231.]

12. APPEAL AND ERROR ☞742—ASSIGNMENT OF ERROR—SUFFICIENCY.

Where the only proposition under an assignment of error was that a definition should be clear, plain, and accurate, no reason in law being disclosed why appellants' special charge should have been given, and the court being left to study the definition offered by appellants and that given, and to determine whether appellants' charge should have been given, the assignment pointed out no error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

**13. APPEAL AND ERROR ⬅️759—ASSIGNMENT OF ERROR—COPYING OUT OF ORDER.**

The copying of assignments in the brief out of their regular order is not permissible under the rules of the court of Civil Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. ⬅️759.]

**14. APPEAL AND ERROR ⬅️719—ASSIGNMENTS OF ERROR—NECESSITY.**

Appellants desirous to contend that the evidence fails to support an affirmative answer to an issue, or that there was no evidence justifying such issue's submission, must raise such questions by proper assignments.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. ⬅️719.]

**15. TRIAL ⬅️352—SPECIAL ISSUES—SUBMISSION—FORM.**

In a suit by riparian proprietors to enjoin a city from removing structures in the bed of a river, where the evidence was sufficient to support a finding that the true bed or channel extended further than a certain survey line of 1891, but the city only sought to open the river to such line, it was proper for the court in submitting a special issue to mention such survey line to identify the disputed strip of land.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. ⬅️352.]

**16. APPEAL AND ERROR ⬅️1070—HARMLESS ERROR—VERDICT.**

In a suit by riparian proprietors for damages and to enjoin a city from further tearing down structures in the bed of a river, where plaintiffs were not entitled to recover the value of the buildings torn down, error by the jury in estimating such value was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4231–4233; Dec. Dig. ⬅️1070.]

**17. APPEAL AND ERROR ⬅️736.—ASSIGNMENT OF ERROR—MULTIFARIOUSNESS.**

Multifarious assignments of error will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. ⬅️736.]

**18. APPEAL AND ERROR ⬅️742—ASSIGNMENTS OF ERROR—SUPPORT BY ABSTRACT PROPOSITION.**

Assignments of error followed only by an abstract proposition of law will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⬅️742.]

**19. APPEAL AND ERROR ⬅️742—ASSIGNMENTS OF ERROR—SPECIFICATION OF ERRORS.**

Assignments of error, relating to evidence, merely complaining of the introduction of evidence set out in a certain bill of exceptions, being following by an abstract proposition that, if any one of a series of objections is tenable, the evidence should be rejected, the statements showing that many objections were made in each instance, will not be considered, since the court cannot be expected to take up each reason given in excepting to evidence and dispose of the same, unless propositions are urged showing a particular rule of law relied on to show error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⬅️742.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Suit by V. A. Petty and others against the City of San Antonio. Judgment for defendant, and plaintiffs appeal. Affirmed.

Jas. D. Crenshaw and Henry Terrell, both of San Antonio, for appellants. Geo. R. Gillette and Robt. J. McMillan, both of San Antonio, for appellee.

MOURSUND, J. On October 12, 1914, appellants presented their petition, in which they alleged that they were the owners of a tract of land located within the corporate limits of the city of San Antonio, fronting on the San Antonio river its entire length between Houston and Travis streets, and that there were valuable improvements on said land; that their title extended to the thread of the center of said river, and that the improvements were erected with the authority or consent of appellee more than 10 years prior to October 10, 1914, and had never been declared dangerous to life or health by any court of competent jurisdiction; that defendant, the city of San Antonio, by and through its agents and employés, on Sunday, October 11, 1914, without right, authority, or permission, entered upon said land, and tore down, removed, and destroyed parts of said improvements, and again on October 12, 1914, entered thereon and are continuing to tear down, remove, and destroy said improvements, to plaintiffs' damage in the sum of $10,000; that there was not, nor is, any immediate danger or calamity threatening the destruction of life, health, or property pending which necessitated or required the immediate tearing down, removal, and destruction of said improvements. The plaintiffs prayed for a temporary injunction to restrain defendant and its employés from entering upon said land and injuring said improvements; that at the final trial said writ be made perpetual and defendant be restrained from interfering with or molesting plaintiffs in restoring said improvements or placing new ones on said land, and that they have judgment for their damages. On October 12, 1914, the temporary injunction was granted.

On October 31, 1914, the city filed its original answer in which it denied all the allegations of the petition except that it removed from the land between Houston and Travis streets certain sheds, platforms, and other obstructions to the flow of the river. Its contention, briefly stated, was that the land upon which said improvements had been placed was a part of the river channel and bed, and that said river was a public waterway and susceptible of navigation, and, therefore, its channel was public domain; that plaintiffs, and those under whom they claim, had encroached upon such channel, thereby interfering with the flow of the river, narrowing the channel in such manner as to create a public nuisance. It alleged that an emergency existed justifying the immediate tearing down of said improvements, and that such emergency was shown by the fact that

less than two weeks thereafter a great and disastrous flood came down the river, inundating the streets, backing up into the yards and houses, and that the earth, filling, and obstructions placed in said river channel by plaintiffs and those under whom they claim, constituted a contributing cause to such overflow. The city alleged further that on April 6, 1891, it passed a resolution adopting a certain river survey shown by map 1, section 8, extending from Convent street to Houston street bridge, being a uniform width of 70 feet, where the obstructions were torn down, which resolution directed the mayor to take the necessary steps to preserve the width of 70 feet between the points named. It was further alleged that it was upon a portion of said 70-foot channel as shown by such survey that the city's employés entered and removed improvements, and that the bed or channel of the river extended even further east into the land held by plaintiffs than was indicated by said survey. The city pleaded an ordinance passed on May 26, 1866, prohibiting the making or erection of any obstructions in the river within the city limits. It also pleaded that at the time the obstructions were placed upon the land claimed by plaintiffs an ordinance was in effect making it unlawful to plant trees or shrubbery, to build walls, dykes, or levees or in any manner encroach upon the margin of the river, without obtaining a permit from the city engineer. The city alleged further that the river runs through the most densely populated part of the city; that it is subject to periodical rises and overflows of such frequent occurrence that they may be at any time anticipated; that at such times it is necessary for it to have the full channel width to carry off the water, and that plaintiff and those under whom they claim and others had encroached upon the river and narrowed the channel until at certain points it is insufficient to hold the water in time of floods; that the buildings torn down and the filling of earth, ashes, etc., which remains on the land claimed by plaintiffs constituted one of the direct proximate contributing causes of the overflow of the river in the past at points above Travis street. The city then set out fully the danger to life and the injuries occasioned to property and health by reason of such overflows. The city also pleaded an ordinance adopted on October 5, 1914, condemning the property claimed by plaintiffs as a public nuisance and ordering its removal within 3 days, which ordinance described the premises claimed to be a part of the river bed, and provided for the removal of the obstructions by the river commissioner if they were not removed by plaintiffs, and it was alleged that plaintiffs were served with notice of the passage of such ordinance. The city alleged further that it had been deepening and restoring the channel of the river, and that it intends to require all parties who have encroached thereon to remove such encroachments. It alleged further that without regard to any question of title the property could only be used in a manner compatible with the public safety; that in three instances within the past 12 months the river has overflowed above Travis street; that the entire river channel is necessary at the point in question to accommodate the water, and that the obstructions upon said property were a nuisance and a menace to public health, and if allowed to remain will cause defendant and its citizens a great and irreparable injury for which they can have no adequate remedy at law.

It prayed that the temporary restraining order be dissolved; that plaintiffs' prayer be not granted; that it be granted a perpetual injunction restraining plaintiffs from again encroaching upon said river and from rebuilding any structures or improvements upon any portion of said property which would impede the flow of the river, and from interfering with defendant in removing such obstructions as still exist thereon.

By supplemental petition plaintiffs joined issue with defendants on all allegations contained in the answer with the exception that they admitted that the river commissioner and other employés removed improvements from land located between the red lines depicted on the map attached to defendant's pleadings, and in this connection plaintiffs alleged that such land had been in the peaceable and adverse possession of themselves and those under whom they claimed for more than 20 years. Plaintiffs also alleged that defendant's employés went upon other property of plaintiffs than that depicted as situated between the red lines on the map, and carried away houses, sheds, and platforms, and damaged other property, all to their damage in the sum of $3,250. Plaintiffs pleaded the statute of limitations of 5 years, and alleged that the land was conveyed by the Spanish government in 1793 to Mathias del Rio; that title passed through mesne conveyances to plaintiffs, and that in said conveyances the land was described as bounded on the west by the San Antonio river; that plaintiffs conveyed to defendant the premises now constituting Travis street between the river and St. Mary's street, and described same as bounded on the west by the meanders of the river; that therefore defendant knew that said land was bounded by the river, and is estopped to deny that such is the case. They denied that the city council had authority to pass the ordinances pleaded, and alleged that they were contrary to the city charter, the laws and Constitution of the state and of the United States.

The city by supplemental answer joined issue upon all the allegations contained in the supplemental petition, and again pleaded that the premises from which the improvements had been removed was public domain, and therefore limitation would not apply. Other pleadings were filed, but the statement made

is sufficient to an understanding of the issues to be discussed. The court overruled the demurrers and special exceptions of both parties.

The case was submitted upon special issues in answer to which the jury found: (1) That the portion of the shed and buildings which was removed by the city, and the filling of earth, ashes, rubbish, piling, etc., beneath same interfered with the natural flow of the San Antonio river in times of high water in such a manner as to constitute one of the proximate causes of the overflow of the river above Travis street. (2) That the filling of earth, ashes, piling, rubbish, buildings, etc., which still remains west of the river survey line of 1891, constitute such an obstruction to the natural flow of the river in time of high water as will constitute one of the proximate causes of the river to overflow above Travis street in the future. (3) That the true bed or channel of the San Antonio river south of Travis street extended as far as the east line of the river survey of 1891 at the time said filling and buildings were placed there, or within a reasonable time theretofore. (4) That the San Antonio river, within the city of San Antonio and immediately south of Travis street, is navigable, either for commercial or other useful purposes. (5) That the San Antonio river, by a reasonable expenditure, commensurate with the results to be obtained, can be made navigable for commercial or other useful purposes within the city limits at and below Travis street. (6) That there was an emergency or imminent danger of immediate destruction to property, or loss of life, from the overflow from the San Antonio river at the time defendant tore down the shed and buildings. (7) That the reasonable market value of the shed, buildings, etc., which were torn down by the defendant, at the time they were so torn down was $300. (8) That the water in the San Antonio river, within the city of San Antonio and immediately south of Travis street, is of an average width of 30 feet.

Upon such verdict the court entered judgment denying plaintiffs the perpetual injunction and damages prayed for in their petition and dissolving the temporary injunction; enjoining plaintiffs from maintaining upon the property described in the decree, which is all the property described in the ordinance pleaded, except a portion excepted by agreement as not involved in this suit, the buildings situated thereon, or the filling of earth, rubbish, ashes, piling or other material which had been placed thereon; enjoining them from rebuilding the structures, which had been torn away or which might be torn away under this decree or from again placing any filling or piling which may be removed under the decree; and enjoining them from interfering with the removal of such structures and filling as now remains on such premises.

The first assignment of error is as follows:

"The court erred in entering judgment herein because: (1) Said judgment gives no compensation to these plaintiffs for their property and buildings destroyed by defendant.

(2) Said judgment enjoins and restrains these plaintiffs from any and all lawful uses of their said property.

(3) Said judgment deprives these plaintiffs of the use of their property without adequate compensation being made therefor."

The three propositions submitted thereunder are abstract propositions of law, based upon the constitutional provision, to the effect that no person's property shall be taken, damaged, or destroyed for, or applied to public use without adequate compensation being made, unless by consent of such person. The statement contains copies of several deeds, portions of the city's pleadings introduced by plaintiffs, testimony of F. F. Collins that he put up the buildings in controversy about 1911, testimony of V. A. Petty that plaintiffs have been in possession of the property for a little over 7 years, and copy of the judgment of the court.

[1, 2] As it is asserted in the assignment that plaintiffs' property and the use thereof has been taken without compensation, we assume that appellants contend that, notwithstanding the findings of the jury, it should be held, first, that plaintiffs' property, or the use thereof, has been taken from them, and, second, that this has been done without making compensation, to which, under the law, they are entitled. The evidence set out in the statement shows that plaintiffs' premises are bounded on one side by the river, but whether they own to the center of the channel or to the water's edge is not disclosed by the muniments of title. The original grant from the sovereignty was not introduced in evidence, and it does not appear that the survey, of which the land described in plaintiffs' muniments of title is a portion, was granted or surveyed prior to the passage of the law now known as article 5338, R. S. 1911. Plaintiffs failed to show title to the middle of the channel. The jury found that the water in the river was of an average width of 30 feet, and it seems that such finding must be given the same effect as if the river was navigable in fact in so far as the title to lands fronting thereon is concerned. City of Austin v. Hall, 93 Tex. 591, 57 S. W. 563. The court was therefore authorized to hold, for the purposes connected with the trial of this case, that the title to the bed of the river was in the state. As the jury found that, at the time the fillings and buildings were placed on the premises described in the judgment, or within a reasonable time theretofore, the true bed of the river extended over said premises, plaintiffs had created a purpresture by filling in and erecting buildings upon premises owned by the state, and cannot object to a judgment which restrains them from continuing such trespass and authorizes the removal of the filling and struc-

tures illegally placed thereon. Farnham on Waters and Water Rights, vol. 1, § 86, p. 410; also section 75, p. 333. See, also, note to Revell v. People, 69 Am. St. Rep. 271.

[3, 4] The question of navigability was made an issue in the case, not upon the theory that the filling and structures constituted obstructions to navigation, but for the purpose of fixing the plaintiffs' property line. If that property line goes only to the water line, the placing of the filling and structures upon the bed of the river constituted a purpresture, and the city was entitled to remove or have same removed whether or not said filling and structures constituted such obstructions to the flow of the river as to be the proximate cause of overflows dangerous to the life and health of the public. But in this case the jury, in answer to the first two issues, found that such filling and structures constituted an obstruction which was one of proximate causes of overflows of the river. The evidence amply supports a finding that such overflows constituted a menace to the public health, inflicted great damage to property, and endangered the lives of people. As this issue was not requested to be submitted, we must make the finding so as to support the judgment of the court, there being evidence to support it. The evidence also warrants a finding, if such a finding be necessary, that at the time the obstructions were placed in the river and at the time they were ordered to be removed the probability of overflows above Travis street was so great that plaintiffs would reasonably be required to anticipate such occurrences. It further appears that the ordinances relating to obstructing the river and encroaching upon its margin, pleaded by the city, were in effect at the time the obstructions were placed in the bed of the river. This case falls within that class of cases in which obstructions are sought to be removed which have been made in a river in such manner and to such extent as to constitute a nuisance. In such cases it is entirely immaterial whether the river is navigable or not. A riparian owner has no right to obstruct the flow of the stream so that it overflows its banks and becomes a menace to the public health, damages property, and endangers life, and to prevent him from using his property in such a manner as to injure other riparian owners of the public, is not depriving him of his property, nor of the use thereof. In this case the judgment of the court does not deprive plaintiffs of any land or riparian rights, but decrees that they cannot be permitted to hold advantages or benefits obtained by them by filling in and obstructing a river in such a way as to create a nuisance. When the filling and obstructions are removed, as decreed by the court, plaintiffs will still have their land and their riparian rights.

[5] We do not think plaintiffs were entitled to recover the damages suffered by them by reason of the removal of the structures found by the jury to have constituted an obstruction proximately causing overflows. It does not appear that the material was taken by the city or destroyed, but that the buildings were torn down. This was done pursuant to an ordinance which required plaintiffs to remove such obstructions, and provided that, if they failed to do so, the city authorities should effect the removal thereof. The jury found that an emergency or imminent danger of overflow and its attendant damages existed at the time the buildings were removed. It is clear that if a trespass was committed no liability would exist for such removal of obstructions, and it is also the law that no compensation can be required when a nuisance is summarily abated, the emergency justifying such summary steps being fully shown. Under the judgment plaintiffs would have been required to remove or permit the removal thereof, and, it having been shown that an emergency existed justifying the summary action, plaintiffs could not recover damages occasioned by the removal thereof before the case was tried, and could not recover the value of the structures. The regulation of the use of property or the destruction thereof under a proper exercise of the police power is not a taking of property without making compensation within the meaning of the Constitution. H. & T. C. Ry. Co. v. Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850; Keller v. Corpus Christi, 50 Tex. 614, 32 Am. Rep. 613; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Baumgartner v. Hasty, 100 Ind. 575, 50 Am. Rep. 850; Dillon on Municipal Corporations (5th Ed.) § 301, p. 553, also § 687, p. 1042; Farnham on Waters and Water Rights, vol. 1, § 76a, p. 355.

The first assignment is overruled.

[6, 7] The court did not err in refusing to give charge No. 3 asked by plaintiffs. The case was submitted on special issues, and this charge was not drawn so as to be applicable to any particular issue. In addition, it stated an erroneous proposition of law, for it is not the law that no relief can be had against an obstruction to the flow of the river if overflows would have occurred had such obstructions not existed. Such obstructions might greatly increase the amount of the overflow, and the danger and destruction caused thereby, and yet according to appellants' theory no remedy would exist. The second assignment is overruled.

[8] The third assignment is overruled. Aside from the fact that there were no pleadings which would have justified the submission of the charge requested, such charge was not properly drawn, for it was not made to relate to any special issue submitted, but called for a general verdict. In addition, it stated an erroneous proposition of law.

[9, 10] No assignment of error is presented which requires us to determine whether the

evidence warrants a finding that the river is in fact navigable, but assignments 4, 10, 11, 15, and 16 are directed at the form of the questions submitting such issue. It is useless to discuss these assignments, for if it be conceded that errors were committed as alleged, such errors are not material for two reasons: First, because the finding that the water of the river is of an average width of 30 feet must be given the same effect as a finding that it is navigable in fact in so far as fixing the boundaries is concerned; and, second, because the city made out a case of nuisance which applies, regardless of whether plaintiffs' line extended to the center of the stream or only to the water line. The assignments are therefore overruled.

[11, 12] The fifth and sixth assignments are submitted together. By the fifth assignment complaint is made because the court refused to give plaintiffs' special charge No. 1, defining what is the "channel or bed" of a stream. The sixth complains of the definition given by the court of the word "channel." It appears that the only objection made to the charge of the court was that the definition given was incorrect. Such an objection is too general to predicate error upon, and the sixth assignment is therefore without merit. The only proposition submitted under the fifth assignment is that a definition should be clear, plain, and accurate. No reason in law is disclosed why plaintiffs' special charge should be given, but we are left to study the definition offered by plaintiffs and that given by the court, and determine whether plaintiffs' charge should have been given. It is apparent that, as briefed, the assignment points out no error, and must be overruled.

By the seventh assignment it is again virtually contended that unless plaintiffs' obstruction of the river was the sole cause of overflows, no relief could be had against the same. This contention has been heretofore disposed of, adversely to appellants, in considering the second assignment of error.

[13-15] The eighth, ninth, thirteenth, and fourteenth assignments of error are grouped. The copying of assignments in the brief out of their regular order is not permissible under the rules. The thirteenth and fourteenth assignments point out no error alleged to have been committed by the court. It is impossible to tell from reading them what ruling is complained of. The propositions under these assignments are abstract propositions of law, but considered in connection with the assignments 8 and 9 they raise two contentions: First, that the second issue submitted is remote and speculative. The contention is without merit. The issue was properly drawn, and if appellants desired to contend that the evidence fails to support an affirmative answer thereto, or that there was no evidence justifying the submission of the issue, such questions should have been raised by proper assignments of error. The second contention is that the court by mentioning the survey line of 1891 recognized such line as legally established. It is apparent that the court only mentioned such line for the purpose of identifying the line of the land alleged by the city to have been a part of the bed or channel of the stream. The evidence was sufficient to support a finding that the true bed or channel extended further east than said line, but as the city only sought to open the river to said line, it was proper for the court to ask the question with reference thereto. No legal effect was given to said survey; it was merely used like any other survey, for the purpose of identifying the disputed strip of land. The assignments are overruled.

The twelfth assignment is without merit. The answer to question 2 is not remote or speculative. If it was the purpose to contend there was no evidence to support the answer, the assignment should have been drawn so as to raise that issue.

There is no merit in assignments of error 17 and 19, and they are overruled.

[16] By the eighteenth assignment it is contended that the answer to question No. 7 is contrary to the evidence. As appellants are not entitled to recover the value of the buildings torn down, it is immaterial whether or not the jury correctly estimated such value.

[17-19] The remaining assignments of error relate to the overruling of the general demurrer to the city's pleadings, the overruling of many special exceptions and objections to the admission of evidence. We consider the assignment relating to the overruling of the general demurrer, and overrule the same. The other assignments will not be considered, for the following reasons: Those relating to special exceptions are multifarious, and only followed by an abstract proposition of law. Those relating to evidence merely complain of the introduction of evidence set out in a certain bill of exceptions, and are followed by an abstract proposition to the effect that if any one of a series of objections is tenable the evidence should be rejected. The statements show that many objections were made in each instance. The court cannot be expected to take up each reason given in excepting to pleadings and each objection to evidence and dispose of the same, unless propositions are urged showing the particular rule of law which is relied upon to show that the court erred in overruling a certain objection. We will say, however, that these assignments relate to matters, which, in our opinion, would not be sufficient to justify a reversal, if error was committed in the respects pointed out.

The judgment is affirmed.