HOUSTON E. & W. T. RY. CO. v. LYNCH. (No. 393.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 14, 1918. On Motion for Rehearing, Feb. 5, 1919.)

1. JUDGMENT ⬤=251(1) — CONFORMITY TO PLEADINGS—NEGLIGENCE—PLEADING.

In actions against a common carrier for injuries, negligence not alleged, though proved, cannot form basis of judgment.

2. TRIAL ⬤=54(1)—STATEMENT BY INJURED PERSON—UNLIMITED INTRODUCTION.

In action for injuries sustained when leaving train by person accompanying passengers, plaintiff's statement to railroad's claim agent, having been introduced by railroad without lim-

itations as to its purpose, should be considered and treated for all purposes.

**3. CARRIERS** &lcub;318(10) — **CARRIAGE OF PASSENGERS—INJURY WHILE ALIGHTING—PROXIMATE CAUSE—SUFFICIENCY OF EVIDENCE.**

In action against railroad for injuries to man while alighting as train started, after he had placed his wife and daughter aboard, evidence *held* to authorize finding that railroad's failure to hold train a reasonable length of time at station, to enable plaintiff to alight, was proximate cause of his injuries.

**4. TRIAL** &lcub;352(1)—**INSTRUCTION — SUBMISSION ON SPECIAL/ISSUES.**

Where case was submitted on special issues, a requested charge, applicable only if the case had been submitted on a general charge, was properly refused.

**5. TRIAL** &lcub;352(1)—**INSTRUCTIONS—SUBMISSION ON SPECIAL ISSUES.**

Requested instructions, merely general and without reference or not directing the jury's attention to any particular special issues submitted in the court's charge, are properly refused.

**6. CARRIERS** &lcub;304(3)—**PERSONS ACCOMPANYING PASSENGERS—DUTY TO HOLD TRAIN.**

If, at a railroad's station, custom prevailed for men to escort women passengers on board trains, railroad holding trains long enough to permit men to alight, it was duty of railroad on particular occasion to observe custom, and allow a man who had seen his wife and daughter aboard the train reasonable time to alight.

**7. TRIAL** &lcub;252(10)—**INSTRUCTION—SUPPORT IN EVIDENCE.**

In action for injuries sustained when leaving train by person accompanying passengers, instruction on effect of ignorance of brakeman of plaintiff's intention to alight *held* properly refused, in absence of evidence on which to base it.

**8. TRIAL** &lcub;352(1)—**INSTRUCTION — WEIGHT OF EVIDENCE.**

In action for injuries sustained when leaving train by person accompanying pasengers, charge submitting special issue *held* not upon weight of evidence.

**9. TRIAL** &lcub;352(4)—**INSTRUCTIONS—SUPPORT BY PLEADING.**

In action for injuries sustained when leaving train by person accompanying passengers, special issues or instructions requested by railroad *held* properly refused, where no such issues were presented by the pleadings.

**10. TRIAL** &lcub;352(4)—**INSTRUCTION—INDECISIVE CHARACTER.**

In action for injuries sustained when leaving train by person accompanying passengers, a special issue or instruction requested by the railroad which would have been decisive of no issue in the case, however it might have been answered, was properly refused.

**11. APPEAL AND ERROR** &lcub;1050(1)—**HARMLESS ERROR—EVIDENCE.**

In action for injuries to a man leaving a train after placing his wife and daughter aboard, action of court in overruling road's objection

to answer of daughter as a witness as irrelevant, immaterial, and hearsay, and also as opinion, *held* harmless.

**12. APPEAL AND ERROR** &lcub;1050(1) — **HARMLESS ERROR—OPINION EVIDENCE.**

In action against railroad for injuries to man leaving train after placing wife and daughter on board, assignment complaining of admission of testimony of daughter that train did not stop long enough to permit plaintiff to assist herself and her mother on board, and to alight, objected to as hearsay, and conclusion, will be overruled where witness had stated the facts, and the same fact was testified to by plaintiff appellee without objection.

**13. APPEAL AND ERROR** &lcub;1050(1)—**HARMLESS ERROR—EVIDENCE.**

In action for injuries to a man leaving a train after placing his wife and daughter on board, admission of testimony of daughter that road's brakeman heard her father tell her he would assist her on train and carry her grip, if it was a conclusion of the witness, *held* harmless.

**14. TRIAL** &lcub;350(1)—**SUBMISSION OF ISSUE.**

Only where there is a dispute in evidence touching some material issue is the trial court required to submit such issue for the jury's determination.

### On Motion for Rehearing.

**15. TRIAL** &lcub;352(4)—**ISSUE HYPOTHESIZING SPECIFIC FACTS — CONTRIBUTORY NEGLIGENCE.**

In action against railroad for injuries to man leaving train after placing wife and daughter on board, court erred in refusing to submit special issue as to contributory negligence requested by railroad, which issue hypothesized specific facts requiring finding of contributory negligence, though road had interposed only general plea of contributory negligence.

**16. TRIAL** &lcub;352(1)—**SUBMISSION OF SPECIAL ISSUE—CONTRIBUTORY NEGLIGENCE.**

In action for injuries sustained when leaving train by person accompanying passengers, special issue as to contributory negligence, submission of which was requested by road, *held* not correctly refused as taking from jury issue of proximate cause.

**17. CARRIERS** &lcub;339 — **PASSENGERS—INJURY—CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE.**

If man in attempting to leave train, which had started, after placing his wife and daughter on board, was negligent, as matter of law, such negligence proximately contributed to his injury when he fell from steps of car.

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Suit by J. S. Lynch against the Houston East & West Texas Railway Company. From judgment for plaintiff, defendant appeals. Reversed, and cause remanded.

---

&lcub;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

McMeans, Garrison & Pollard and Stevens & Stevens, all of Houston, for appellant.

Baldwin & Baldwin, of Houston, for appellee.

HIGHTOWER, C. J. The statement of the nature and result of this suit, as made in appellant's brief, is found to be substantially correct, and is as follows:

J. S. Lynch, appellee, brought this suit against the Houston East & West Texas Railway Company, appellant, to recover damages for personal injuries alleged to have been sustained my him while disembarking from one of defendant's passenger trains at the station of Cleveland, Tex., which he had entered for the purpose of assisting his wife and married daughter, who were taking passage on said train to the city of Houston.

The appellee alleged that on the 3d day of November, 1916, his wife and his married daughter, Mrs. R. B. Baldwin, were going to Houston on a visit, and had with them their suitcases and certain bundles, and needed the assistance of appellee in boarding and securing seats on said train, and that he went with them to defendant's passenger depot at Cleveland for the purpose of assisting them in getting their tickets, carrying their baggage, and assisting them to seats on the train; that said train stopped at the depot in Cleveland for the purpose of letting passengers off and on, and that appellee and his wife and daughter were near the steps of the car when the train stopped, and that appellee then informed the brakeman and other servants of appellant in charge of said train that he himself was not leaving on the train, but was only assisting the two ladies to board the train and procure seats, and that he wanted to get off before the train started; that immediately thereafter appellee entered the car for the purpose of assisting said ladies with their baggage and to procure seats in the car; that said train did not remain the usual and customary length of time at said station, but started before appellee had been allowed a reasonable time to assist said ladies with their baggage into said car and to assist them to seats therein; that appellee thereupon hurriedly set down the grips which he was carrying for his wife and daughter, and immediately went to the front end of the coach which he had entered, for the purpose of alighting therefrom, but was prevented from getting off by the brakeman or porter, who was then assisting another lady passenger up the steps of said coach; that appellee then immediately went to another step across the vestibule between said coaches, and there attempted to alight from said train, believing that he could safely get off, but that he was thrown to the ground by a sudden jerk from the train, falling on his head, neck, and shoulders, and received injuries, which were specifically mentioned in his petition.

Appellee further alleged that it was and had been the custom, well known to and acquiesced in by appellant, its agents, servants, and employés, at the station of Cleveland, to allow male persons to assist lady passengers aboard its passenger trains, and to assist them in finding seats thereon, and to hold said train for such purpose; that on the occasion in question appellant negligently failed and refused to hold the train a reasonable or sufficient length of time to allow appellee to perform such service and to disembark from said train; that appellant's servants negligently started said train without giving appellee reasonable time to disembark after having entered said train for said purpose; that in view of such custom as aforesaid, and under the circumstances mentioned, it was the duty of appellant to hold said train a reasonably sufficient length of time to allow appellee to enter the same and assist his wife and daughter, as aforesaid, and then to alight therefrom before said train should be started; that the act of starting said train before he had time to perform said services and to alight therefrom was negligence upon the part of appellant, and that such negligence caused his injuries.

It was further alleged that in alighting from said train appellee used proper care and diligence, and substantially that appellee was not guilty of any negligence which contributed to his injuries. There were other allegations in the petition describing minutely the character and extent of the injuries sustained by appellee while attempting to alight from said train.

Appellant answered by general denial and by a general plea of contributory negligence on the part of appellee.

The case was tried with a jury, and was submitted upon special issues, in answer to which the jury found:

(a) That the agents and servants of appellant knew, or should have known, of the presence of appellee on said train.

(b) That such servants and agents knew, or should have known, that appellee desired to alight from said train after assisting his wife and daughter thereon.

(c) That the servants of appellant were guilty of negligence in failing to hold said train a reasonable length of time under the circumstances to enable appellee to alight therefrom.

(d) That such negligence was the proximate cause of appellee's injury.

(e) That plaintiff was not guilty of contributory negligence in getting off of said train at the time and under the circumstances he did so.

The jury further found that $1,000 would fairly and justly compensate appellee for the injuries sustained by him.

Upon this verdict judgment was entered

in favor of appellee for the sum of $1,000, with interest thereon, and for costs of suit. Appellant's motion for new trial having been overruled, the case was properly brought here by appeal.

By the first assignment of error complaint is made of the action of the trial court in refusing to peremptorily instruct a verdict in favor of appellant. Under this assignment we find three propositions, which we will here state:

(1) Negligence not alleged, though proved, cannot form the basis of a judgment.

(2) Plaintiff, having alleged that the negligent failure of the defendant to hold its train at Cleveland a sufficient length of time to allow him to alight therefrom was the proximate cause of the injuries received by him in attempting to alight, was not entitled to recover upon proof of his being thrown from the train and injured by a jar, jerk, or lurch of the train after it had started and at a time when he was not attempting to alight.

(3) Plaintiff, having alleged that the negligent failure of defendant to hold the train a sufficient length of time to allow him to alight was the proximate cause of his injuries, and having proved that his injuries were proximately caused by a sudden jerk, jar, or lurch of the train, the variance between the allegations and proof is fatal as to his right to recover, and the judgment cannot stand.

From the foregoing statement of the allegations of the appellee's petition it is apparent that the proximate cause of the injuries sustained by him was the starting of the train before appellee had been allowed a reasonably sufficient time to assist his wife and daughter aboard said train and to procure seats for them, and then to alight therefrom.

[1] We concede at the outset the correctness of the first proposition under this assignment, and adhere to the rule, firmly established in this state in cases of this character, that negligence not alleged, though proved, cannot form the basis of a judgment, and what we shall say further in disposing of this assignment will have reference to the second and third propositions above mentioned.

If, as contended by appellant, in effect, the undisputed evidence showed that the starting of the train on the occasion in question was not the proximate cause of appellee's injury, then he was not entitled to a recovery in this case, and the trial court should have given the peremptory instruction requested by appellant. The contention of appellant that there was a variance between appellee's allegations and proof as to the proximate cause of his injuries, as we understand it, is based upon appellee's own testimony alone. Appellant takes the position that appellee's testimony shows clearly that the proximate cause of his injuries was not the negligence of appellant, if any, in causing the train to be started; but that the proximate cause, as made by appellee's testimony, was a sudden jerk, jar, or lurch of the train after the same had been put in motion, and at a time when appellee was not in the attempt to alight from said train. Appellee, among other things, on the trial below testified as follows:

"On the day of the injury, when the train stopped and the passengers alighted, my wife, daughter, and I were standing just a little out of the way of the passengers that came off of the train. We were not more than four feet, I think, from the steps when the train stopped, and, as well as I remember, there were not but three passengers got off, and we loaded on as quick as we could, my wife and daughter did, and when she went I went on behind to carry the grip for her. I didn't lose any time from the time the train stopped until I reached the place where I set the grips down and left the train. I run back. The train was going before I could put the grips down. I did not know about how long the train had been in the habit of stopping there prior to that time; I never paid any attention to it. Frequently, though, it would stay there some little while. * * * I did not lose a bit of time that evening, not until I got that fall. When I entered the train I had just gone back five seats before I set the grip down. My wife and daughter stopped at the fifth seat. I didn't make any hesitation at all. I turned around and started back. When I come back the negro brakeman was pulling Mrs. Trout up the steps. * * * That made me go to the vestibule of the next car just ahead of there. The two cars have a vestibule. There is a space on either side to enter either car. The car that I had entered was the hind car. I had walked up the steps to enter the hind car, and walked back about five steps when the car started. Then I set the grips down and ran back. I retraced my steps to the same place I got on. Sure, I intended to get off there, but it was blocked. * * * I could have gotten off the steps there if it had not been anything there to prevent me from doing so, but, seeing the steps were blocked, I went on the next steps and started down. The next steps were the car just ahead. With reference to how far those steps were from the steps I tried to enter, the two cars join each other, and I just went through the vestibule and down the other. I went back and went through the vestibule and attempted to go down the next steps. I suppose the speed of the car gave some kind of lurch, and I started to fall, and I grabbed the handrail on the side to keep from falling on my face. I don't suppose I turned that thing loose. I was unconscious there for a while. I tried to keep from falling. I would have fell on my face if I hadn't grabbed that rail. I don't know anything about whether the train was stopped after that. With reference to what effect the fall had on my mentality on that occasion, at that time I was pretty crazy. I didn't know anything at all at that particular time. * * * I had carried my wife and daughter on previous occasions to that. I don't know what the habit was, but then I have seen them doing that frequently (meaning men assisting women on the train). I had been doing that frequently prior

to that time. With reference to whether I know of anything that prevented the conductor from knowing that custom or habit, I don't know where the conductor was that evening, but I think he was back in the negro coach, or I understood he was. Prior to that time I don't know of anything that prevented him from knowing that everybody was doing that, people assisted their family relations on and off."

On cross-examination he testified:

"I couldn't tell you whether the train was about on time when it came up on that day, because I wasn't timing the train, but I presume it was just about on time. I did pay particular attention as to how long the train stopped there; when it started before I could walk back five seats and back. I paid particular attention only to the time it started, when I didn't get off; I supposed it stopped there about a minute. * * * I don't know whether the train was running slow when it started or not. It wasn't running slow when I started to get off; when I passed by this negro when I wanted to get off * * * they were speeding up. I couldn't tell you anything about how fast they were running when I reached the vestibule door; how many miles an hour. I couldn't guess at it at all. I don't know how fast the train was going, but I know it was running pretty fast; in my opinion, about 12 or 15 miles an hour. When I went out and passed the negro brakeman, and went to the other vestibule and started down the steps to get off, the train was running about 14 miles an hour, and I suppose the engineer was speeding up trying to get faster, and in doing that it give a sudden jerk, and caused me to start to fall, and I grabbed that handrail to keep from falling on my face. I was on the steps when that serious vital sudden jerk occurred. I was about on the third step, I suppose. That is not the bottom step. I wasn't on the bottom step, I know, because I started to fall when I grabbed that handrail. I was on the second step, because I know I grabbed that handrail as I started to fall, and I couldn't check myself, and by doing that I kept from falling on my face. It is not a fact that I went out there and walked down those steps and stepped off. I suppose the train was running about 14 miles an hour. With reference to whether I went out there and was going to get off that train running 14 miles an hour, I was going to wait and see what they were going to do. If they hadn't stopped, I wasn't going to get off. I could have went on to Grover's Mill. It was three miles down there, but I wasn't going to take any chances on a train going like it was. It wasn't the failure of the train to stop that caused me to get hurt, but it was the jerk that caused me to get hurt; the sudden lurch of the train caused me to start to fall. The company was negligent from my viewpoint, for which I am seeking to recover now, by reason of being negligent in having the train give a violent jerk. That's what caused me to fall. If it hadn't been for that I never would have been hurt. I would have gone on to Grover's Mill. I wouldn't have attempted to get off there. It wasn't the length of time that the train stayed there that interfered with me at all, but it was the sudden jerk that caused me to fall; and that's wherein the company is negligent, for which I am suing."

On redirect examination he testified:

"With reference to him asking me while ago if my sole complaint of negligence wasn't the fact that that train gave a sudden lurch, my complaint of negligence is charged in this petition filed in this case. The statement of my case is made in that petition. It was the next day after this accident happened that this written statement was taken. * * * I have never had any experience in railroading. I have never had any experience in the speed of trains. I am not capable of telling the rate per hour a train is running. I don't know anything about how fast the train was running at the time of the injury."

Now, if we clearly understand the contention of appellant, it is that appellee having testified, as above shown, that it was the jerk or lurch of the train after the same had started which caused him to fall, and that but for such jerk or lurch the accident would not have happened, that clearly it was made to appear that such jerk or lurch of the train, after the same had started, was the proximate cause of appellee's injuries, and that the negligent starting of the train, if there was negligence in that respect, was clearly shown by appellee's own testimony not to have been the proximate cause of his injuries, but that the sudden jerk or lurch of the train, after the same had started, was shown by his testimony, by which he ought to be bound, to have been the proximate cause of his injuries.

We find from the record, however, that appellant on the trial below introduced in evidence a written statement which was made by appellee to appellant's claim agent on the day following the accident, which statement reads as follows:

"Cleveland, Tex., 11–4—16.

"My name is J. S. Lynch, 67 years of age, occupation Singer Sewing Machine agent. Yesterday, Nov. 3rd, 1916, I accompanied my wife and daughter, Mrs. R. B. Baldwin, to Cleveland, and put them on H. E. & W. T. train for Houston. We were at station waiting for train when it came, and as soon as people got off we immediately got on. I was carrying my daughter's grips, as she had a baby. I carried my wife and daughter back about six seats from the front of the car, and found them seats, and about the time we found seats, and I was waiting for my daughter to be seated, bell rang, and I heard it and set grip down and went to front of train as fast as I could, and when I got to the vestibule train had started up and a negro porter and a woman were at the vestibule, a white lady, who the porter was holding and pulling up the steps; and had to walk to the vestibule in the car just ahead of one my wife was in, and by time I got to that vestibule train was running along pretty fast, and in getting off I fell—slipped and fell off. Don't know what I slipped on, but I fell in getting off. Porter was in vestibule where we got on, and set grips up in vestibule all except one I had in my hand. I never said anything to porter when I got on and conductor wasn't there. Train stood very short while; can't say how long. I had no intentions of becoming a pas-

senger, and was only assisting my wife and daughter on."

The record in this case further discloses that according to the evidence of every witness who testified below, both for appellee and appellant, there was no jar, sudden jerk, or lurch of the train at the time appellee attempted to alight therefrom, or at any time after the train had started and before he alighted; and all the other evidence in the case for both sides was, substantially, to the effect that appellee simply walked down the steps of the car and attempted to alight therefrom as a person would come down any steps and step on the ground, and that while in such attempt he fell and was injured. All of this evidence coincides with and corroborates the statement of appellee, which was made to appellant's claim agent the day after the injury, and which was introduced by appellant, as above shown; and, according to his statement, appellee went down the steps of the coach, and was in the act of alighting therefrom when his foot slipped and he fell to the ground.

[2, 3] Now, in the first place, it is our opinion that, from a careful consideration of appellee's testimony as a whole, he did not testify positively that there was a jerk or lurch of the train which caused him to fall, but that he supposed or thought that there was such a jerk or lurch of the train, and that he was thereby caused to fall, and would not have fallen otherwise. But, be that as it may, the written statement made by him to appellant's claim agent on the day succeeding the accident shows clearly that he fell while in the attempt to alight from the train, and there was nothing in that statement indicating that he was caused to fall by reason of any jerk or lurch of the train; and this statement having been introduced by appellant without limitations, in so far as the record discloses, as to its purpose, we think the same should be considered and treated for all purposes; and when the same is so considered, together with all the other evidence in the case, it is manifest therefrom, or at least it is sufficient to warrant a finding, that appellee was not caused to fall from the train because of a sudden jerk or lurch, but that he fell while in the attempt of alighting from said train to the ground. We would not be understood as meaning, however, that if it had been shown without dispute that there was a sudden jerk or lurch in the train after the same had been started, and before appellee had had a reasonably sufficient time to alight therefrom, and that on account of such jerk or jar he was precipitated to the ground and injured, that such jerk or jar should be considered, as a matter of law, the proximate cause of his injuries. We do not decide this point, because we deem it unnecessary to do so. The issue of proximate cause in cases of this

character is usually one of fact, to be determined like any other issue of fact in the case, and sometimes it becomes difficult of determination. Ry. Co. v. Mussette, 86 Tex. 717, 26 S. W. 1075, 24 L. R. A. 642, and authorities there cited. In conclusion on this point, it is our opinion that the state of the evidence, considered as a whole, was such as to leave the question of proximate cause of appellee's injuries a question of fact for the determination of the jury, and that the evidence was sufficient to authorize a finding of the jury to the effect that appellant's failure to hold the train a reasonable length of time at the station of Cleveland, so as to enable appellee to alight therefrom after having assisted his wife and daughter thereon, was a proximate cause of his injuries on that occasion, and the first assignment of error is therefore overruled.

[4] The second assignment of error complains of the action of the trial court in refusing to give a special instruction requested by appellant, which was as follows:

"In this case you are instructed that if you find and believe from the evidence that the employés in charge of said train believed, or had reasonable grounds to believe, that the plaintiff, J. S. Lynch, intended to become a passenger on said train, then you are instructed that the plaintiff cannot recover, and your verdict should be for the defendant."

As stated in the beginning, this case was submitted to the jury upon special issues, and the charge requested would have been applicable only in the event the case had been submitted on a general charge, and for that reason alone it cannot be held that the assignment points out reversible error. Petty v. San Antonio, 181 S. W. 224, and cases there cited. The assignment is overruled.

[5, 6] The third assignment of error complains of the action of the trial court in refusing the following special instruction:

"In this case you are instructed that it is not the duty of the defendant railroad company to hold its trains at a station a reasonable length of time to allow persons to assist their relatives on said train, unless said fact was known to said employés, or, in the exercise of ordinary care, could have been known to said employés, at the time and before the party entered said train."

This requested instruction was but a general one, and had no reference, or at least did not direct the jury's attention, to any particular special issue submitted to them in the court's charge, and for that reason it was properly refused; and, further, it was properly refused because it, in effect, told the jury that there was no duty resting upon appellant to hold its train a reasonably sufficient length of time to allow appellee to assist his wife and daughter on said train and to alight therefrom before the same was put in motion, unless appellant's servants in

charge of said train had actual knowledge of the fact that appellee had entered said train for the purpose only of assisting his wife and daughter, and that he intended to alight therefrom. Appellee alleged, not only that appellant had actual knowledge that he had entered the train for the purpose only of assisting his wife and daughter, and that he intended to disembark therefrom, but also he alleged that it was the general custom at the time of the accident and prior thereto for male relatives to assist their female relatives to board appellant's trains at the station of Cleveland, and that such custom was well known to appellant and acquiesced in by it, and that on the occasion in question appellant failed to hold said train in keeping with such custom, etc. If, as a matter of fact, the custom mentioned prevailed, then it was the duty of appellant on this occasion to observe it, and allow appellee reasonable time to alight from said train after having assisted his wife and daughter thereon. For both reasons the trial court was not in error in refusing the instruction, and the assignment is overruled.

[7] By the fourth assignment of error complaint is made of the refusal of the trial court to give to the jury the following special instruction:

"In this case you are instructed that if you find and believe from the evidence that it appeared, or reasonably appeared, to the brakeman, at the time J. S. Lynch entered said train, that he intended to become a passenger, or that the brakeman did not know, or in the exercise of ordinary care did not know, that it was the intention of plaintiff, J. S. Lynch, to get off of said train, then you are instructed that the defendant company was not required to hold its train at the station of Cleveland any longer, but had a right to give orders that said train proceed after it reasonably appeared to the brakeman that said passengers who intended to board said train had entered said train for passage."

As stated with reference to the special instruction made the basis of the third assignment, this special instruction was one general in form, and did not direct the jury's attention to any particular special issue submitted in the court's charge, and for that reason we think it was properly refused; and, further, we think it was properly refused because there was no evidence upon which to base it. The brakeman himself who testified in this case testified that he did not even remember seeing or noticing the defendant in error or his wife and daughter, and he nowhere claimed in his evidence that he thought or believed that appellee was entering the train as a passenger, and surely the charge could not have been properly based upon his testimony; and the testimony of appellee and his wife and daughter is almost conclusive, if not quite so, to the effect that the brakeman actually knew that appellee was entering the train for the purpose only of assisting his wife and daughter, and not for the purpose of becoming a passenger. Therefore there was no error in refusing the instruction, and the assignment is overruled.

[8] By the fifth assignment complaint is made that the trial court was in error in submitting to the jury this special issue:

"Were the servants of defendant, or any of them, guilty of 'negligence,' as that term has been defined, in failing to hold said train a reasonable length of time under the circumstances, so as to enable plaintiff to alight therefrom, if they did so?"

The only proposition under this assignment is:

"Whether the defendant held the train a reasonable length of time on the occasion in question was a sharply contested issue of fact; and the charge of the court above complained of assumes as a fact that the train was not held a reasonable length of time under the circumstances, and was therefore upon the weight of the evidence, and constitutes reversible error."

We cannot agree with appellant that this charge was upon the weight of the evidence, because it is clear to our minds that it was so framed as to leave to the jury the question as to whether appellant held the train a reasonably sufficient time to allow appellee to alight therefrom. The assignment is overruled.

The sixth assignment complains of the action of the trial court in submitting this special issue to the jury:

"Was such negligence, if any you have found, the direct and proximate cause of plaintiff's injuries, if any?"

The assignment is submitted as a proposition, and also appellant adopts as additional propositions thereunder the first, second, and third propositions under its first assignment of error, which are hereinbefore mentioned. As to the propositions under the first assignment of error, they are disposed of by what we have said in dealing with that assignment. This assignment of error is therefore overruled.

[9] By the seventh assignment of error complaint is made that the court erred in refusing the following special instruction:

"Was the defendant company 'negligent,' as that term has been defined by the court to you in its main charge, in failing to stop the train after it became aware of the fact that the plaintiff, J. S. Lynch, intended to leave said train after it was set in motion?"

The eighth assignment complains of the action of the court in refusing the following special instruction:

"Did the defendant company, after it was apprised of the fact that the plaintiff, J. S. Lynch, would probably attempt to get off said train while in motion, exercise 'ordinary care,' as that term has been defined by the court in its main charge, to stop said train for the purpose

of permitting the plaintiff, J. S. Lynch, to alight therefrom?"

The court did not err in refusing both of these instructions, for the plain reason that no such issue was presented by the pleadings in the case. The assignments are therefore overruled.

The ninth assignment of error complains of the refusal of the trial court to give to the jury the following specially requested charge:

"Was the plaintiff, J. S. Lynch, at and just before the time he was injured, guilty of contributory negligence? You will answer this question 'Yes' or 'No.' And in this connection you are instructed that if you find and believe from a preponderance of the evidence that after the plaintiff, J. S. Lynch, entered the coach of defendant company, and after the train had started, that the plaintiff, J. S. Lynch, went to the rear end of the smoker, and attempted to alight therefrom while said train was in motion, and walked down said steps for the purpose of getting off of said train, knowing at the time the speed of said train, and you further find and believe from the evidence that when he reached the bottom step of the coach he immediately stepped off on the ground in the way and manner that you find from the evidence that he did step off, if you find that he did step off of said train, and you further find and believe that a man of ordinary prudence would not have attempted to get off of the train while it was in motion, and at the speed it was running, and in the way and manner that the plaintiff, J. S. Lynch, attempted to get off of said train, then you are instructed that the plaintiff would, in law, be guilty of contributory negligence, and you should answer this question, 'Yes.' "

Appellant's contention in this connection is that, having pleaded contributory negligence on the part of appellee, it had the right to prepare and demand the giving of a charge requiring the jury to find whether the evidence established the existence of the group of facts specified in the instruction, and whether such facts constituted contributory negligence upon the part of the plaintiff. As stated in the beginning, the plea of contributory negligence interposed by appellant was only a general one. It was as follows:

"And for further answer in this behalf defendant charges and avers that if plaintiff was injured in the manner described by him in his petition, which this defendant denies, then that such injuries proximately resulted to him from his own negligence and want of exercise by him of ordinary care, whereas he is not entitled to recover."

It will be observed that this plea does not attempt to specify any particular act or omission on appellee's part which constituted contributory negligence, and under such general plea appellant was not entitled, as a matter of right, to have any particular facts upon which it relied as constituting contributory negligence grouped, and have them thus submitted to the jury. In support of its contention under this assignment, appellant cites

208 S.W.—46

the case of Ry. Co. v. McGlamory, 89 Tex. 638, 35 S. W. 1058, and Ry. Co. v. Rogers, 91 Tex. 58, 40 S. W. 956. We recognize the rule laid down in those cases, and believe it to be sound; but in each of them the plea of contributory negligence was specific, and it was held, for that reason, that the defendant was entitled to have the facts claimed to constitute contributory negligence grouped and affirmatively and pointedly submitted to the jury. Also we would remark that each of those cases were submitted to the jury on a general charge. We are of opinion, however, that, whether a case be submitted on a general charge or on special issues, a defendant would be entitled to have any group of facts properly pleaded and supported by the evidence, which it might be claimed constituted a defense to the action, pointedly and affirmatively submitted to the jury for their finding. We can see no reason why this rule should not obtain where the case is submitted on special issues, if it be sound when invoked where a general charge is given. In this instance, however, as we have just stated, there was no special plea of contributory negligence, and it was not reversible error on the part of the trial judge to refuse the special charge requested. It will also be observed that the charge as requested takes from the consideration of the jury the question as to whether the negligence on the part of plaintiff, if there was such, proximately contributed to his injuries, and we are not sure that the trial court could have properly taken that question from the jury in this instance. Usually the question as to whether negligence on the part of a plaintiff in cases of this character became a proximate cause of his injury is one of fact for the jury, though we are aware that the facts may be such that such negligence, when established, should be held as a matter of law to be a proximate cause of the injuries. It is unnecessary to here determine whether the claimed negligence on the part of plaintiff, if it existed, was as a matter of law a proximate cause of his injuries. For the reason stated it cannot be held that the trial court committed reversible error in refusing this special instruction, and the assignment is overruled.

[10] By the tenth assignment complaint is made of the refusal of the trial court to give this special instruction:

"Did the plaintiff, J. S. Lynch, fall from said train by reason of the way and manner that he attempted to get off said train while in motion?"

If the court had given this special instruction it would have been decisive of no issue in the case, however the same might have been answered by the jury, and therefore there was no error in its refusal. The assignment is overruled.

[11] The eleventh assignment of error com-

plains of the action of the court in overruling appellant's objection to the answer of the witness Mrs. Baldwin to the ninth interrogatory propounded to her, which answer was as follows:

"It is my belief, from the remark made by my father after I had stated that I could not carry the grip in with the baby, 'to go on in,' that he would carry my grip in, that the porter knew that he intended to get off the train after assisting us on the train."

The objection made to this answer was that it was irrelevant and immaterial and hearsay, and also that it was the mere opinion of the witness.

It was shown by the testimony of Mrs. Baldwin, as well as by appellee himself, that at the time she started to enter the train of appellant the brakeman was standing within 18 inches of herself and father, and that she (Mrs. Baldwin) stated, "I cannot get in with my grip and baby;" and thereupon appellee remarked, "Go on in and I will bring your grip"; that thereupon Mrs. Baldwin went in the train with her baby, and appellee followed her with her grip. Now, the only objection that could be made to this answer of Mrs. Baldwin at all would be on the ground that it was the opinion of the witness that the brakeman knew that her father did not intend to take passage on the train from the remark made to her in the brakeman's presence, as above mentioned. While technically speaking, this answer may have been subject to this objection, at the same time, in our opinion, it is not of sufficient importance to cause a reversal of this case; and besides, whether the brakeman actually knew appellee's purpose in going on the train would not be controlling in this case. If the custom pleaded by appellee prevailed, then it was the duty of appellant to hold its train at the station of Cleveland a reasonable length of time to permit appellee to assist his wife and daughter on the train, and to alight therefrom before the train should be started, whether the brakeman actually knew appellee's purpose in going on the train or not; and the record in this case shows that the custom, as pleaded, was established by the undisputed evidence on the trial. The assignment is therefore overruled.

[12] The twelfth assignment complains that the court committed error in permitting Mrs. Baldwin to testify, substantially, that on the occasion in question the train did not stop a sufficient length of time to allow appellee to assist his wife and daughter thereon and to alight therefrom, as it was his intention to do. The objection to this evidence was that it was hearsay, and the opinion and conclusion of the witness, and that it invaded the province of the jury.

The witness had theretofore testified fully as to the time the train remained at the station of Cleveland, and had fully stated the facts upon which this conclusion on her part was based, and, besides, the very same fact was testified to by appellee himself without objection, and for these reasons we think that the assignment should not be sustained, and the same is overruled.

[13, 14] The thirteenth assignment complains of the action of the court in permitting Mrs. Baldwin to testify, substantially, that defendant's brakeman heard her father tell her he would assist her on the train and carry her grip, and that he was going to get off the train after he had seated her; the objection being that such evidence was but the opinion and conclusion of the witness, and invaded the province of the jury.

We cannot agree with this contention. As before stated, Mrs. Baldwin had already testified that, when these remarks were made by her father to her, the brakeman was standing by the side of them, and not more than eighteen inches from them, and, in the nature of things, he must necessarily have heard these remarks, if they were made. It was shown by the brakeman that he was not deaf, because he testified to other things he heard on that occasion, when the opportunity afforded him was not so favorable. But we remark again that appellee's right to a recovery did not depend solely upon actual knowledge on the part of appellant's brakeman that he did not intend to become a passenger on said train, but, as before stated, the evidence showed conclusively the custom alleged by appellee; and therefore it was the duty of appellant, in keeping with such custom, which fixed it with constructive notice of appellee's intention in going on said train, to hold said train a reasonable length of time, under such circumstances, to allow appellee to assist his wife and daughter and to alight from said train. Ry. Co. v. Hutchingson, 62 Tex. Civ. App. 536, 132 S. W. 509, and authorities there cited.

It is true no issue touching the pleaded custom was submitted to the jury for its determination, and should not have been, because, as before stated, its existence was without dispute in the evidence; and it is only in instances where there is a dispute in the evidence touching some material issue that the trial court is required to submit such issue for the determination of the jury. Now, the fact, if it be a fact, that appellant's brakeman did not actually know that appellee intended to board the train merely for the purpose of assisting his wife and daughter, still, in view of the undisputed evidence in the case as to the prevailing custom, the appellee was entitled to recover in this case, if appellant was guilty of negligence in not observing such custom, and such negligence proximately caused appellee's injuries, and therefore the admission of the testimony complained of on the part of Mrs. Baldwin, if error, was, in our opinion, harm-

less, and should not cause a reversal of this case.

There is no complaint by appellant that the verdict of the jury was without support in the evidence in any particular, and what we have said disposes of all the assignments of error; and there being none which, in our opinion, should cause a reversal, they are all overruled, and the judgment of the trial court will be affirmed, and it is so ordered.

### On Motion for Rehearing.

[15] Appellant, in its motion for rehearing in this cause, has challenged the correctness of the opinion of this court with reference to practically all assignments of error passed upon; but, after a careful consideration of the motion for rehearing, we are still convinced that we were correct in overruling all of appellant's assignments of error, with the exception of the ninth assignment. As to that assignment we have concluded, after careful consideration of the motion, that we were in error, and that the ninth assignment ought to have been sustained. That assignment was as follows:

"The court erred in failing and in refusing to submit special issue No. 6 requested by appellant, which was as follows:

" 'Was the plaintiff, J. S. Lynch, at and just before the time he was injured, guilty of contributory negligence? You will answer this question "Yes" or "No."

" 'And in this connection you are instructed that if you find and believe from a preponderance of the evidence that after the plaintiff, J. S. Lynch, entered the coach of defendant company, and after the train had started, that the plaintiff, J. S. Lynch, went to the rear end of the smoker, and attempted to alight therefrom while said train was in motion, and walked down said steps for the purpose of getting off of said train, knowing at the time the speed of said train, and you further find and believe from the evidence that when he reached the bottom step of the coach he immediately stepped off on the ground in the way and manner that you find from the evidence he did step off, if you find that he did step off of said train, and you further find and believe that a man of ordinary prudence would not have attempted to get off of the train while it was in motion, and at the speed it was running, and in the way and manner that the plaintiff, J. S. Lynch, attempted to get off of said train, then you are instructed that the plaintiff would in law be guilty of contributory negligence, and you should answer this question "Yes." ' "

In the original opinion in this case we said, in substance, that appellant was not entitled to have this issue submitted to the jury, grouping the facts relative to the defense of contributory negligence, as done in the requested charge, for the reason that appellant had interposed only a general plea of contributory negligence, not specifying any facts upon which it would rely as constituting such negligence, and that, therefore, it could not complain of the refusal of the court to give this special instruction grouping these specific facts, and thus have them affirmatively and pointedly submitted to the jury for a finding on that issue. On that point our former opinion was supported by the opinions of several of our Courts of Civil Appeals, among them being Railway Co. v. Parker, 20 Tex. Civ. App. 470, 49 S. W. 717, 50 S. W. 606, Railway Co. v. Hagood, 21 Tex. Civ. App. 442, 52 S. W. 574, and several other opinions by the Courts of Civil Appeals of this state following the Parker and Hagood Cases. On motion for rehearing, however, appellant for the first time has called our attention to the case of Railway Company v. Mangham, 95 Tex. 413, 67 S. W. 765, the opinion in which was by the Supreme Court of this state, speaking through Judge Brown. After careful consideration of the decision in that case, which was in answer to a certified question from the Galveston Court of Civil Appeals, we have concluded that our holding in the former opinion, to the effect that appellant was not entitled to the requested instruction, for the reason that its plea of contributory negligence was only a general one, was error, and that the decision of the Supreme Court in that case is conclusive in favor of the contention of appellant on this point.

In the Mangham Case this point arose on the following statement and question made by the Galveston court to the Supreme Court:

"The defendant pleaded merely: (1) A general denial. (2) A general plea of contributory negligence. The plea fails to set forth any acts of contributory negligence on the part of the plaintiff, but simply pleads that 'plaintiff's injury was caused by lack of care and contributory negligence, under the circumstances of the case, in getting upon, or attempting to get upon, the engine of defendant, which defendant pleads in bar of plaintiff's cause of action.' (3) And the general plea that plaintiff assumed the risk of said defective step. * * *

"The appellant asked a special charge of contributory negligence, in which the facts were grouped and the law applied thereto. This charge was refused, and error is here assigned therefor.

"The court's charge of contributory negligence was in general terms, but as full as defendant's plea, and correct as far as it went.

"Question: Where the facts in evidence relied on by the defendant to constitute contributory negligence are not specifically pleaded, and the court fails to group the facts, but charges in general terms on contributory negligence, is the defendant entitled to have given a special charge grouping the facts and applying the law thereto?"

To this statement and question the Supreme Court answered:

"If the facts grouped in the appellant's charge were admissible under the plea of contributory negligence, and the charge was correct, it should be given. A defendant may plead contributory negligence in general terms, and, if not excepted to, the plea will authorize the introduction of testimony to establish the fact of negligence.

Telegraph Co. v. Jeanes, 88 Tex. 230 [31 S. W. 186]. The pleadings furnish the standard by which the court determines the admissibility of evidence, but it is the duty of the court to instruct 'the jury as to the law arising on the facts.' Rev. St. art. 1317."

It is clear to us that the opinion of the Supreme Court in the Mangham Case is contrary to what we held on this point in the former opinion, and we were therefore in error in overruling appellant's ninth assignment of error, and now hold that the same must be sustained, and the motion for rehearing is granted, and the judgment of the trial court will be reversed and the cause remanded.

[16, 17] We also said in the former opinion, in substance, that we were not sure but what the special charge was correctly refused because it took from the jury the issue of proximate cause. After further consideration on this point, however, we have concluded that if the plaintiff, Lynch, was guilty of negligence, which was left as a question of fact to be determined by the jury, then it follows as a matter of law that such negligence proximately contributed to his injury. It is the contention of appellee, however, that this requested instruction takes from the jury both the issue of negligence on the part of the plaintiff and the issue of proximate cause; but it will be readily seen, upon consideration of the requested charge, that it does not take from the consideration of the jury, as a question of fact, the issue of negligence on the part of the plaintiff, but it does take from the jury the question as to whether such negligence, if it existed, proximately contributed to the plaintiff's injury, and properly so.

Nothing could be gained by a further discussion of the question at this·time, and, since we have been convinced that we were in error in not sustaining appellant's ninth assignment of error, we now do so; and the judgment will be reversed, and the cause remanded, and it is so ordered.