**GULF, C. & S. F. RY. CO. et al. v. HILL et al.**
**(No. 1317.)**

(Court of Civil Appeals of Texas. Beaumont.
April 7, 1926.)

**1. Evidence ⬤⟷318(2)—Testimony, in suit for spoiling of tomatoes in transit, that telegram from telegraph company said tomatoes were spoiled, held hearsay.**

Testimony of shipper, in suit for tomatoes spoiled in transit, that a telegram from telegraph company said the tomatoes were spoiled, *held* hearsay and its admission error; there being no showing of the connection of the telegraph company with the defendants.

---

⬤⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

2. **Evidence ⬥⟹318(4)—Testimony of shipper, in suit against railroad, that report by government inspector said shipment was rotten on arrival, held error, where there was no showing of inspector's connection with railroad.**

Testimony of shipper, of tomatoes, in suit against railroad for their spoiling in transit, that report made by government inspector stated the tomatoes were rotten when they reached their destination, *held* hearsay and its admission error, where there was no showing of inspector's connection with railroad.

3. **Evidence ⬥⟹20(2)—Court of Civil Appeals takes judicial notice that government relinquished control of railroads, on certain date, and that railway was not being operated by government four months later.**

Court of Civil Appeals takes judicial notice that United States government relinquished its management and control of the railroads at midnight on certain date, and that the Gulf, C. & S. F. Ry. Co. was not under government control or operation four months later.

4. **Carriers ⬥⟹137—In suit against railroad for spoiling of tomatoes rained on while awaiting delayed freight train, refusal to instruct that, if person of ordinary care would have covered shipment and failure to do so was negligence, shipper's conduct was proximate cause of loss, held error.**

In suit against railroad for loss of tomatoes rained on while awaiting delayed freight train, refusal to instruct that, if a person of ordinary care would have covered the shipment and failure to do so was negligence which caused the wetting, jury should find that shipper's conduct was the proximate cause of the loss, *held* error.

Appeal from District Court, Shelby County; R. T. Brown, Judge.

Suit by Lem Hill and another against the Gulf, Colorado & Santa Fé Railway Company and another. Judgment for plaintiffs, and defendants appeal. Reversed and rendered in part, and reversed and remanded in part.

Terry, Cavin & Mills, of Galveston, Young & Stinchcomb, of Longview, and E. H. Carter, of Center, for appellants.

Dallas Ivey, of Center, for appellees.

HIGHTOWER, C. J. This suit was filed in the district court by the appellees, Lem Hill and M. L. Walker, as plaintiffs, against the Gulf, Colorado & Santa Fé Railway Company and James C. Davis, Agent, as defendants; the plaintiffs seeking to recover of defendants the value of 1,792 crates of tomatoes alleged to be of the market value of 75 cents per crate, and also the further sum of $484, as an expense bill which plaintiffs alleged they paid to defendants in connection with the shipment of the tomatoes.

Stated substantially, the plaintiff's petition alleged that during the spring and summer of the year 1921, they were partners in the purchase and sale of tomatoes and other farm produce in San Augustine county, and that when they would purchase tomatoes and other farm produce, they would do so with the view of shipping the same to market for sale over the defendant railway company's lines, and that a few days before June 20, 1921, they, by a verbal order to the defendant Gulf, Colorado & Santa Fé Railway Company, through its local agent at San Augustine, Tex., requested that defendant deliver to them at Bland Lake, in San Augustine county, two cars in which to ship their said tomatoes from that point to Kansas City, in the state of Missouri. They alleged that they informed the local agent at San Augustine that one carload of their tomatoes would be at Bland Lake ready to be loaded at 6 o'clock p. m. on June 20, 1921, and requested the agent at San Augustine to have one of the cars at Bland Lake at that hour, in order that their tomatoes might be promptly loaded into the car and transported to Kansas City, Mo.; that the agent at San Augustine promised plaintiffs that the car demanded would be delivered and placed on a side track at Bland Lake at 6 o'clock p. m. on June 20, 1921, as requested by plaintiffs. Plaintiffs further alleged that it was agreed between them and the agent at San Augustine that the second car would be delivered at Bland Lake at 6 o'clock p. m. on June 21, 1921, into which plaintiffs might load the balance of their tomatoes. They further alleged that neither of said cars was delivered and placed at Bland Lake as requested by them and as promised by the local agent at San Augustine would be done, but that, on the contrary, the first car ordered was not delivered or placed at Bland Lake until some time between 9:30 and 12 o'clock on the night of June 20, 1921; that about 8 o'clock on that same evening a heavy rain set in, and that 896 crates of plaintiffs' tomatoes were exposed to the rain and got very wet, and that plaintiffs had no other alternative than to load these wet tomatoes into the car when it did reach Bland Lake, and that they did load their tomatoes into this car, and it was shipped out next morning to Kansas City, Mo., where the tomatoes were to be sold on the market.

Plaintiffs further alleged that the second car ordered for the shipment of their tomatoes was not delivered at Bland Lake at 6 o'clock p. m. on June 21, 1921, as requested by them and as the local agent at San Augustine had promised would be done, but that, on the contrary, that car was delivered at Bland Lake several hours later than the time agreed upon, and that in consequence of such delay, 896 crates of their tomatoes that were to be shipped in the second car were rained upon and became very wet and had to be placed in the car in that condition and shipped out to Kansas City, Mo., the following morning.

---

⬥⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Plaintiffs then alleged that because their tomatoes were rained upon and shipped in that condition, they became spoiled, rotten, and ruined by the time they reached Kansas City, and were unsalable and worthless, all of which they allege was caused by the negligence of appellants in failing to deliver the two cars at Bland Lake at the hours agreed upon for their delivery, as before stated. Plaintiffs further allege that notwithstanding the fact that they lost all their said tomatoes, they were called upon by appellants to pay the expense of the shipment to Kansas City, which aggregated $484, and that they did pay to appellants that sum of money in order to have the tomatoes released in Kansas City. The prayer was for the recovery of the market value of their tomatoes and the $484 that they had paid to appellants as the expense of the shipment.

Appellants answered by general demurrer, general denial, and by specially denying that they had made the contract as alleged in the plaintiff's petition for the delivery of the two cars at Bland Lake at any certain hour, and that if any such contract was made by the agent of appellants, as alleged by the plaintiffs, such agent was without authority to make any such contract, and that the same was not binding upon appellants. Appellants further interposed as a defense a plea of contributory negligence on the part of the plaintiffs, on the ground that they should have provided some means of covering or sheltering their tomatoes while awaiting the arrival of the cars at Bland Lake, and that they failed to do so.

The case was tried with a jury, and was submitted upon special issues, and upon the verdict as returned, judgment was entered in favor of the plantiffs, against both defendants, for the sum of $1,155, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment, and both defendants have prosecuted this appeal.

A number of assignments of error and related propositions are relied upon by appellants for reversal of the judgment, but we shall only specifically mention such of the contentions made by appellants as is necessary to dispose of this appeal, and other contentions, relating to matters which will probably not arise upon another trial, will not be noticed.

[1] The only evidence introduced upon the trial in behalf of the plaintiffs was that of Mr. Walker himself, Mr. Hill not having been a witness in the case. Mr. Walker testified that he did not go with the shipment of tomatoes to Kansas City, nor did Mr. Hill, nor did any agent of theirs, but that the shipment was to the order of Hill and Walker, notify Bycke Bros. Mr. Walker further testified that he never saw any of the tomatoes after the cars moved from Bland Lake, and that the only information he had regarding their condition when the shipments reached Kansas City was a telegram from the Western Union Telegraph Company at Kansas City and an inspection report which he stated was made to the plaintiffs by a government inspector. Mr. Walker testified that he did not have the telegram, and over the objection of appellants he was permitted to state the contents of the telegram, which was, in substance, that the tomatoes, when they reached Kansas City, were rotten and ruined and worthless, and asking permission to dump the tomatoes. Appellants' objection to this evidence of Mr. Walker was that it was hearsay and not binding at all upon either of the appellants, but the court overruled the objection and appellants properly saved their bill, and this action of the court is made the basis of one of appellants' assignments here. The assignment must be sustained, because anything that was said in the telegram by the Western Union Telegraph Company was certainly hearsay, so far as appellants were concerned, and we are at a loss to understand upon what theory the court admitted this evidence. We find no explanation in the record for the court's action in this connection. It is true, Mr. Walker testified that all matters relating to the shipment of these tomatoes was turned over to appellant railway company at the time they presented their claim for the loss of their tomatoes, but there was nothing to explain what connection, if any, the Western Union Telegraph Company had with appellants in this transaction, and, as we have stated, the contents of the telegram would not have been admissible even if the telegram itself had been produced by Mr. Walker. We therefore sustain the assignment of error interposed by appellants attacking the action of the court in permitting Mr. Walker to testify to the contents of this telegram.

[2, 3] Mr. Walker further testified, in substance, that he had seen a report made by a government inspector, but did not have the report with him at the trial because it had been turned over to appellant railway company at the time plaintiffs filed their claim for the loss of their tomatoes, and he was permitted to state the contents of this report, which was, in substance, that the tomatoes were ruined and rotten and unsalable when they reached Kansas City. This testimony was objected to on the ground that it was hearsay and not binding upon appellants, but the court overruled the objection and admitted this evidence before the jury. This was error because, as contended by appellants, no connection between the person who made this report to the plaintiffs and the appellants in this case was shown, and it was hearsay as to both of these appellants, unless it might be presumed that the person who made this report was acting for appellants here; but we think we are not permitted to indulge in any

such presumption. We know judicially that the Gulf, Colorado & Santa Fé Railway Company was not under the control of or being operated by the United States government at the time this shipment of tomatoes took place, for we must judicially know that the government relinquished its management and control of the railroads at midnight on February 29, 1921, practically four months before this shipment moved. It follows that the court was in error in permitting Mr. Walker, over appellants' objection, to testify to the contents of this claimed government inspector's report as to the condition of this shipment of tomatoes.

[4] In submitting the defense of contributory negligence interposed by appellants in this case, the court put the special issue, which was No. 5, in this form:

"You will determine from the evidence whether or not the acts and conduct in the loading and handling of the said cars of tomatoes by the plaintiffs herein was the proximate cause of the damage, if any, to said cars of tomatoes. Answer this question 'Yes' or 'No.'"

There really was no such plea of contributory negligence, as we read the answer of appellants. In other words, as we read the answer, appellants did not allege that anything in the manner of loading or handling the tomatoes by plaintiffs resulted in their loss, but the plea was that plaintiffs should have covered up their tomatoes in some way while they were on the ground awaiting the arrival of the cars in which they were to be shipped. And in keeping with their plea of contributory negligence, appellants requested the court to instruct the jury in connection with special issue No. 5 as follows:

"You are instructed that if you find from the evidence that a person of ordinary care, situated as the plaintiff M. B. Walker was, would have covered the tomatoes with a tarpaulin, or would have otherwise prevented rain, if any, from falling upon his tomatoes at Bland Lake, and that his failure to prevent the rain falling on these tomatoes was negligence on his part which caused or contributed to cause the rain, if any, to fall on his said tomatoes, you will answer 'yes' to question No. 5 in the court's main charge."

We think that the evidence in this case warranted this requested issue and required the court to give it. Mr. Walker testified, in substance, that he had had some 20 years' experience in the handling of tomatoes; that he knew that if these tomatoes were rained on they would probably be ruined before they reached Kansas City, and would be a total loss; that he knew it frequently rained in the month of June in the vicinity of Bland Lake, from which this shipment moved, and he knew that there was no shed or house or other means of protection of these tomatoes at Bland Lake from rain; that he knew that all freight trains frequently ran behind time, and could not be reasonably expected to arrive at any particular point at any particular hour; that he had had a number of years of experience as a railroad man, and had observed the movement of trains, and that he knew that the cars in which this shipment was to be made would have to be brought by appellant all the way from Longview to Bland Lake, because the local agent at San Augustine had so informed him at the time he requested these cars. When Mr. Walker was asked the specific question, while a witness on the stand, why he did not cover these tomatoes with a tarpaulin or some other cover to protect them from the rain, he stated that he did not have any tarpaulin with him at Bland Lake at the time, and that he relied upon the promise of the San Augustine agent to have the cars at Bland Lake at 6 o'clock p. m. on each day of the shipment, as the agent had promised to do. As we have shown above, Mr. Walker stated that he had had considerable experience as a railroad man, working in different capacities, and that he knew that freight trans frequently did not run on schedule time, and knowing this, together with the other facts to which he testified, a jury might have concluded, and we think reasonably so, that a person situated as Mr. Walker was at the time, with this shipment, would have furnished some sort of protection, in the way of cover, to these tomatoes, in the event it should rain before the cars arrived. Therefore, we believe that the court should have given to the jury the instruction requested by appellants in connection with the special issue No. 5. Appellants had the right, as we understand the authorities and the evidence in this case, to group the facts as it did in this requested instruction, as a guide to the jury in answering special issue No. 5. T. & P. Ry. Co. v. Johnson, 118 S. W. 1117, 55 Tex. Civ. App. 495; Ry. Co. v. Shieder, 30 S. W. 903, 88 Tex. 152, 28 L. R. A. 538; Ry. Co. v. McGlamory, 35 S. W. 1058, 89 Tex. 635; Fox v. Dallas Hotel Co., 240 S. W. 517, 111 Tex. 461; Railway Co. v. Lynch (Tex. Civ. App.) 208 S. W. 714.

Since there could be no judgment rendered in this case against the appellant James C. Davis, Agent, for any amount, the trial court's judgment as to him is reversed and here rendered in his favor, and the judgment as against appellant Gulf, Colorado & Santa Fé Railway Company is reversed and as to that appellant the cause is remanded for a new trial. Other assignments not discussed by us relate to matters which will probably not arise upon another trial.

Reversed and rendered in part, and in part reversed and remanded.