Missouri, Kansas & Texas Railway Company of Texas v.
W. D. Parker.

Decided February 25, 1899.

**1. Damages for Personal Injury.**

A verdict for $10,000 is not excessive for personal injuries sustained by a healthy man 28 years old by which his skull was crushed and a portion removed, leaving the brain unprotected except by the skin, and his left eye destroyed, where he was earning from $80 to $95 per month at the time of his injury, and can not now do any labor, because it brings on nervous spells or dizziness.

**2. Practice—Charge Not Warranted.**

A requested instruction that the fact that a railway company repairs its track can not be considered as evidence that it was defective or not in proper condition previous thereto, is properly refused where the company's counsel first drew out from a witness, for the purpose of contradicting him, that the track was still out of repair shortly before the trial, and to impeach him proved by another witness that new ties and stringers were put in shortly after the accident to plaintiff, and showed by such latter witness that the reason such ties and stringers were put in was that the old ones were not sound.

**3. Charge—Weight of Evidence.**

A charge that a railroad company is presumed to keep its bridges and tracks in proper condition and make the necessary repairs thereon from time to time as they are needed before they get in a dangerous condition, and the fact that such repairs are made can not be considered as evidence that they were defective and not in proper condition previous to the repairs, is upon the weight of evidence.

**4. Same—Burden of Proof—Contributory Negligence.**

Where the court's charge put the burden of proof on plaintiff to prove "that he did not contribute to his injury by his failure to exercise ordinary care for his own safety," a requested charge that plaintiff (a fireman) was injured while attempting to go through a bridge at night with his head out of the cab window, and if this aided in causing the injury, and an ordinarily prudent person would not have done so, he can not recover, was properly refused.

Appeal from Cooke. Tried below before Hon. D. E. Barrett.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*C. B. Randell,* for appellee.

HUNTER, Associate Justice.—Appellee instituted this suit on April 13, 1898, to recover of appellant damages for personal injuries alleged to have been received on December 11, 1897, while appellee was in the employ of appellant as fireman on one of its locomotives; such injuries, it is alleged, being caused by appellee's head striking against the side of one of appellant's bridges. It was also alleged that the injury was caused by the negligence of appellant in the improper and defective construction of the bridge, and in allowing and permitting it to be and remain out of repair, and in allowing its track at the entrance of said bridge to be and remain out of repair.

The defense was the general denial, and specially that the injuries complained of "were proximately caused and contributed to by plaintiff's own negligence and want of ordinary care," assumed risk, and that "the

plaintiff had full notice of the defects and causes which produced his injuries, or by ordinary care might have known thereof in ample time to have avoided the same."

Verdict and judgment went against appellant for $10,000, and hence this appeal.

The record discloses that appellee, on December 11, 1897, was in the employ of appellant as fireman on one of its freight trains, and on the night of that day, between 9 and 10 o'clock, while his engine was entering the iron bridge across Mustang Creek, in Grayson County, Texas, he had his head out of the cab window to see if the caboose was following, and as he turned his head to look at the smokestack to see if his fire was burning properly, the left side of his face and forehead came in contact with the side of the bridge, and his skull and left cheek bone were crushed and his left eye destroyed. It was his duty to put his head out of the window for the purpose of watching the caboose and the smokestack, and he was not guilty of any negligence in doing so.

The evidence is sufficient to establish that the bridge was too narrow for the width of the engines then in use on the road, and also that on the side on which appellee was injured it was out of plumb and leaned in several inches towards the track, while the track was lower on that side, thus tending to bring the engine cab and bridge post closer together by several inches than if the bridge and track had been in good repair. The defendant was negligent in allowing its bridge and track thus to be out of repair, and this negligence was the proximate cause of the injury. Appellee had only made four or five trips over the road, and did not know the condition of the bridge.

The appellee was 28 years old at the time of the injury, and was stout and healthy. His skull was crushed on the left side of his forehead, so that a portion thereof one inch wide and two inches long was removed by the doctors, leaving the brain at that place unprotected except by the skin. His cheek bone was also fractured, and his left eye destroyed, and he is disfigured for life. He testified that his physical suffering was not great, though severe at times, but that his mental suffering and anguish was great. He can not read long at a time, on account of "a dancing sensation" in his right eye. He was earning from $80 to $95 per month as fireman at the time he was injured. His general health is good now, but he can not do any labor, because it brings on nervous spells or dizziness. From this we conclude that $10,000 is not an unreasonable or excessive verdict.

We have carefully examined all the assignments of error presented by the learned counsel of appellant, and overrule them. Those presented against the court's charge are not well taken, and those complaining of the refusal of the court to give special charges are overruled, because in every instance where the requested charge was properly drawn the point had been already well and fully presented in the court's main charge; so that it would not be profitable to discuss more than two or three of them.

The fourth and fifth assignments are as follows:

"4.   The court erred in refusing the first special charge requested by defendant, as follows: 'The fact, if you find it to be a fact, that the defendant made repairs in its bridge or track can not be considered by you as evidence that such bridge or track was defective or not in proper condition previous to the time such repairs were made.'

"5.   The court erred in refusing the second special charge requested by appellant, as follows: 'The defendant is presumed to keep its bridges and tracks in proper condition and to make the necessary repairs thereon from time to time as they are needed before they get in a dangerous condition, and the fact that such repairs are made can not be considered as evidence that they were defective and not in proper condition previous to the making of such repairs.' "

The second special charge requested would have been on the weight of the evidence, and besides, is not law.   No such legal presumption arises or exists as is asserted therein; and if it is a presumption of fact, of course the court should not charge it; and hence the fifth error assigned must be overruled.

The fourth assignment requires a statement of the evidence to show its fallacy.

The plaintiff introduced Smith, and on chief examination proved by him that the top of the bridge at the west end leaned south at least six inches at the time of the injury, and that the cross ties at the west entrance were then not sound, but rotten, and that the north side of the track at this entrance was, in consequence thereof, one and a half or two inches lower than the south side.   On cross-examination he was made to say that he saw the bridge and track on Monday before the trial (date of trial May 13, 1898), and that the ties were then rotten and the north side of the track lower than the south side about one and a half inches; and that although the bridge gang soon after Christmas in 1897 had, by the use of jack screws, straightened it up some, yet it still leaned about three inches, and that it was plainly visible to the natural eye.

Defendant then proved by Arbegast, its general foreman of its bridge building department, that the bridge was built in 1893; that he and Mr. Roquemore, an architect of Gainesville, Texas, saw the bridge and track on Sunday before the trial, and that the bridge was perpendicular, the ties sound, and the track level at the west entrance; that in January, 1898, he had put in a new deck, stringers, ties, and guard rails, and that he had inspected it in November, 1897, and it was perpendicular then, and he had never heard of its being out of line; that nothing had ever been done to the bridge to put it in line.   On cross-examination Mr. Arbegast stated that "the ties in the bridge were not good, and it was time for the stringers to come out, is the reason I had a deck put on after the plaintiff was injured.   They were removed in January after plaintiff was injured."

In rebuttal the plaintiff proved by Hunter that he, plaintiff's attorney, and a young man viewed the bridge on Sunday before the trial, and

applied a plumb line to the end in dispute, and found it four or five inches out of plumb.

From this statement of the evidence it will be seen that the defendant first drew out as new matter from Smith, evidently for the purpose of contradicting him, that the track was still out of repair on the Monday before the trial, and then, to contradict and impeach him, proved by Mr. Arbegast that he put in new ties, stringers, etc., in January, 1898; from which counsel of course expected the jury to conclude that if he put in new ties in January, 1898, they could not have been rotten in May of the same year; while the plaintiff's counsel, in cross-examination of Mr. Arbegast, made him tell why he put in the ties and stringers, that is, that the old ones were not sound, and that it was time for them to be renewed, which latter statement was in corroboration of Smith's testimony that they were rotten when the injury occurred, and was properly drawn out from an apparently unwilling witness of defendant, who was its foreman in charge of that department of its service.

Now, it was wholly immaterial to the issues in the case whether the track and bridge were out of repair on Monday before the trial or not; yet defendant's counsel drew out this fact as new and immaterial matter, knowing that they had two witnesses who had examined them on Sunday before, ready to swear to the contrary, and in order to make assurance doubly sure, and to establish beyond all cavil that Smith was mistaken, proved that they were repaired only about four months before the trial, and just after the injury occurred. In other words, the defendant's counsel deliberately set up a straw man before the jury, in order to show them how easily they could knock him down, and afterwards, fearing they had not entirely laid him out, requested the court to hit him a lick. We think the court was justified, under the circumstances, in preserving a strict neutrality in the conflict between appellant's counsel and their straw man.

This case is easily distinguishable from Railway v. Johnston, 78 Texas, 540.

The eighth, ninth, tenth, eleventh, and twelfth assignments of error relate to the same subject, and complain of the court's refusal to give special charges to the effect that, if plaintiff was injured while attempting to go through the bridge at night with his head out the cab window, and if this aided in causing his injury and an ordinarily prudent person, in the exercise of due care for his own safety, would not have done so, then to find for defendant. Another varied this charge so as to deny plaintiff the right to recover if he protruded his head farther out of the cab window than an ordinarily prudent person would have done under the circumstances; and another varied it so as to require the jury to find for defendant if it was not necessary for plaintiff to put his head out while passing through bridges, or if it was more dangerous to do so while passing through bridges than at other times, it being his duty to select the least dangerous times to do it.

The learned counsel for appellant under these assignments make one

proposition of law, viz: "Where the charge of the court consists entirely in the announcement of general principles, without attempting to apply the law to the facts in evidence, the defendant, by requesting it, is entitled to a charge pertinently calling the attention of the jury to the law applicable to the facts relied upon by it to show contributory negligence on the part of the plaintiff.

The court charged the jury on this issue as follows:

"2.    It was also the duty of the plaintiff to use ordinary care for his own safety.    Ordinary care as required by law of both plaintiff and defendant, means such care as an ordinarily prudent and careful person would use under similar circumstances, and a failure to exercise such care constitutes negligence.

"3.    If you find from the evidence that the defendant was guilty of negligence in any or either of the ways above mentioned, and if you further find that on account of such negligence the plaintiff was struck by said bridge and injured, and if the plaintiff did not contribute to his injury by his own failure to exercise ordinary care for his own safety, then you will find for plaintiff and assess his damages at such sum as you believe from the evidence will afford him a just and fair pecuniary compensation for the injury sustained," etc.

"5.    If you find from the evidence that the plaintiff was struck by said bridge and injured, yet if you find that at the time he was struck he was not exercising ordinary care for his own safety,—that is, if he was acting in a way that an ordinarily prudent and careful person under similar circumstances would not have acted, and if this aided in causing his injury, then you will find for the defendant, even though you may find that the defendant was also guilty of negligence."

"7.    The burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant company was guilty of negligence, and that such negligence caused him to be struck by said bridge and injured, and also that he did not contribute to his injury by his own failure to exercise ordinary care for his own safety, and unless he has done so, you will find for the defendant."    See Railway v. Shieder, 88 Texas, 158.

Now, the only contributory negligence pleaded by defendant was the "want of ordinary care," and the court, it will be seen, submitted the issue in exactly the terms contained in the plea.

The rule laid down in Railway v. McGlamory, 89 Texas, 635, and Railway v. Rogers, 91 Texas, 57, is invoked to sustain these assignments.    In the McGlamory case the contributory negligence of plaintiff relied upon to defeat the recovery was drunkenness, and was specially pleaded.    The evidence tended to support the plea, and the defendant asked a special charge presenting the defense as pleaded and proved, which the court below refused, because a general charge on the subject of intoxication had been given.    Our learned Justice Denman, in delivering the opinion of the court, said: "But the charge of the court nowhere undertakes to apply the law to the evidence adduced in support of said special plea of contributory negligence.    This being true, the correct rule is that

defendants had the right to prepare and demand the giving of a charge requiring the jury to find whether the evidence established the existence of any specified group of facts which, if true, would in law establish such plea, and instructing them that if they found such group of facts to be established by the evidence, to find for defendants. And this would be true if proper charges had been asked as to each of the several special pleas of contributory negligence presented by the record. Any other rule would deprive litigants of their right to have the court explain to the jury the principles of law applicable to the very facts constituting a cause of action or defense, so that they may intelligently pass upon the various complicated issues frequently presented for their determination in one case, under our practice." Citing Railway v. Shieder, 88 Texas, 166.

In the report of the Shieder case it does not appear whether the facts embodied in the special charge as constituting contributory negligence of plaintiff were pleaded or not, but what was said there, on the point here under consideration, is in the nature of obiter dictum, because the requested charge in that case was held to be properly refused for another reason; and the same may be said of the case of Railway v. Rogers.

We therefore consider the McGlamory case as the leading case in Texas on the point under consideration, and certainly the most carefully considered one, and in that case the facts as grouped in the charge asked had been grouped in the pleading of defendant as well. In the case at bar the plea of contributory negligence sets up no fact or group of facts,—only that if plaintiff was injured it was "caused by his own negligence and want of ordinary care," and the court's charge, therefore, was as specific as the defendant's plea. We therefore conclude that, in such cases, the party is not entitled to a charge grouping the evidence. He must specify and group the facts in his plea, in order to entitle him to have them specified and grouped in the charge; and this rule we understand the McGlamory case to establish, and thus construed it is reasonable and correct. At all events, this is all that is authoritively decided on the question in that case.

We are of opinion furthermore that, as the only act of the plaintiff which could have contributed to his injury was the protruding of his head out of the window further than was necessary to perform his duty of looking at the smokestack, the court's charge in putting the burden on plaintiff to prove "that he did not contribute to his injury by his own failure to exercise ordinary care for his own safety," as shown in the seventh paragraph thereof, necessarily required the jury to consider and determine the points of fact embraced in the special charges asked.

Besides, as to one of the charges asked, there was no evidence that appellee put his head out further than was necessary to see the smokestack around the front end of his cab, except what may be inferred from the collision itself, but on the contrary he testified that he did not put his head further out than was necessary to perform his duty, and the undis-

puted testimony of the engineer, appellant's witness, was that it was his duty to do this, whether passing through bridges or not.

Considering the injury, the verdict was not excessive.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

A majority of the court think that in our original opinion herein it was perhaps not necessary to decide that, in order to entitle the defendant to a special charge grouping the facts constituting the grounds of the defense of contributory negligence, they must have been pleaded, and hence the majority of the court desire to be understood as expressing no opinion thereon. The writer, however, adheres to the views as expressed in the original opinion, and to the rule as there laid down, and thinks that the plea of contributory negligence was not specific enough to require the charges requested.

For still another reason the writer is of opinion that the charge asked, as set out in the fourth assignment, was properly refused. It would have been misleading, and a charge upon the weight of the evidence; in that, when Mr. Abergast testified that he repaired the track and bridge because "the ties in the bridge were not good, and it was time for the stringers to come out, is the reason I had a deck put on after the plaintiff was injured," he stated a substantive fact tending to show that the bridge and track were in bad condition at the time of the injury, and plaintiff was entitled to this fact; and the giving of the charge as asked might have confused the jury, and probably have destroyed the effect of that admission.

Of course, it seems to be settled in Texas that the bare fact of repairs being made soon after the injury occurred can not be proved as tending to establish that the thing in controversy was out of repair at the time of the injury; but the ruling is put upon the ground of public policy,— not that it does not tend to prove bad condition, because it does by inference at least; but I do not understand that where the party complaining puts the fact in evidence himself, and his witness states that the reason the repairs were made was because the thing was in bad condition, and in fact needed them, any court has ever held such substantive evidence incompetent upon any ground, or has ever attempted to limit it.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.