## HOOVER v. HAMILTON. (No. 9161.)

Court of Civil Appeals of Texas. Galveston.
Feb. 5, 1929.

Rehearing Denied Feb. 28, 1929.

Vinson Elkins, Sweeton & Weems, Fred R. Switzer, and Richard T. Fleming, all of Houston, for appellant.

T. W. Gregory, Sam Streetman, and Andrews, Streetman, Logue & Mobley, all of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover upon a contract, the terms of which are alleged in plaintiff's pleading to be, in substance: That, if plaintiff would assist defendant in carrying out a contract between him and Mr. Don Hall, a building contractor, for the pro-

motion and construction of a sixteen-story office building in the city of Houston, to be known as the Houston Medical Arts Building, and to be specially equipped and adapted for offices for members of the medical profession, the defendant would pay to plaintiff one-half of all the commissions or profits which would accrue to him from the performance of his contract with Don Hall.

The petition alleges that, by the terms of the agreement between Don Hall and defendant, Hall was to advance the money necessary to purchase a suitable site for the location of the proposed building and all expenses necessary in carrying out the promotion plan, which included the organization of a Texas corporation to hold title to the property, all or substantially all of the capital stock of such corporation to be assigned to Hall in consideration of his conveyance to it of the property upon which the building would be built; and that Hall would then enter into a contract with the corporation to construct the building in accordance with plans and specifications, and for a price to be agreed upon by him and the corporation.

By the terms of this alleged contract between defendant and Hall, the defendant was to negotiate and arrange for the purchase of a suitable location for the building, and negotiate and procure a loan or loans of the money necessary to carry out the enterprise, to be secured by a lien upon the building and the land upon which it would be located, and that defendant would receive as compensation for his services such commissions as might be agreed upon by him and Hall. It is then alleged that: "An essential part of the carrying out of the enterprise was that it should be endorsed by the Harris County Medical Society, and in order to procure this endorsement it was necessary that a suitable location for the building be determined on, a contract secured for the purchase of same and plans and specifications of the building made, all satisfactory to said Society."

The petition further alleges that, in accordance with the contract and agreement between plaintiff and defendant, the plaintiff assisted the defendant in selecting a suitable site for the building and in procuring an option for its purchase from its owner for a consideration of $124,000, and in further performance of his agreement aided and assisted defendant in procuring the approval and indorsement of the Harris County Medical Association of the enterprise, and of the plans and specifications and location of the proposed building, and in every way aided and assisted the defendant in the performance of his part of the work necessary in the promotion and completion of the enterprise; the services so performed by plaintiff being set out in detail in the petition.

After alleging the final performance of defendant's contract with Don Hall, and the completion of the building, the plaintiff claims various amounts as due him under his contract with the defendant for one-half of the commissions and profits received by him under his contract with Don Hall; the amounts so claimed aggregating the sum of approximately $23,000.

The defendant answered by general demurrer and a general denial of the allegations of the plaintiff's petition.

The trial of the cause in the court below with a jury resulted in a verdict and judgment in favor of plaintiff.

In answer to special issues submitted by the court, the jury found that the defendant made the contract with the plaintiff as alleged in plaintiffs' petition; that defendant received, as part of his compensation for carrying out his contract with Don Hall, $2,000 as commissions paid him by the Adair Realty & Trust Company; that defendant received from Don Hall, as compensation for performing his part of the contract with Hall for promoting and carrying out the enterprise, $10,000 in money and a note for $30,000; that Don Hall now holds $10,000 of the capital stock of the corporation before mentioned, which he admits belongs to defendant or to the defendant and plaintiff, as a part of the commissions or profits accruing to defendant in carrying out the enterprise.

The jury further found that plaintiff's agreement with defendant to use his influence to secure the indorsement of the enterprise by the Harris County Medical Society did not include any agreement on the part of defendant to conceal from the medical society the fact that plaintiff was to receive compensation for his services in procuring the indorsement of the enterprise by the society.

In accordance with the verdict and the undisputed evidence, plaintiff recovered judgment against the defendant in the following amounts:

(1) For $647.05, being one-half of the commissions received by the defendant upon the sale of the said real estate after deducting the expenses incurred by defendant and the amount already paid by defendant to plaintiff.

(2) $5,000, being one-half of the two amounts of $5,000 each collected by defendant from Don Hall.

(3) $1,000, being one-half of the $2,000 collected by the defendant from Adair Realty & Trust Company, with interest on said several sums from the dates when they were severally collected by the defendant.

Plaintiff also recovered an undivided one-half interest in the $30,000 note executed by Don Hall to defendant, and a one-half interest in 100 shares of stock of the Medical Arts Building Company at the par value of $100 each, held by said company (Don Hall) for the benefit of plaintiff and defendant.

The appellant has filed quite a lengthy brief, presenting a number of assignments and propositions upon which he urges a re-

versal of the judgment. It would serve no useful purpose to set out or discuss the propositions in detail; all of them have been duly considered by us, and none can, in our opinion, be sustained.

The first and main contention in the brief is that the contract sued on is unenforceable, because obnoxious to public policy, in that it contains an agreement by plaintiff "to receive a secret profit to induce third persons having confidence in him and believing him to be financially disinterested to do some act. by which he would receive some financial profit," and that such contract is unenforceable because it is a "contract for a reward to influence by apparently disinterested advice the conduct of a third person." This contention is based upon the evidence of plaintiff to the effect that he did not tell any of the members of the Harris County Medical Society, when he advocated before the society and in personal interviews with its members the indorsement of the proposed Medical Arts Building to be constructed upon the plan offered by Mr. Hall and defendant, that he would receive a part of the promotor's compensation accruing to defendant under his contract with Hall.

The evidence shows that plaintiff was a charter member of the Harris County Medical Society, has been prominent in all of its affairs, and stands high in its confidence and councils.

We think appellant's contention is fully answered by the fact that the Harris County Medical Society was a purely social organization, with no capital stock, and that neither the Society nor any member thereof incurred any financial obligation by the indorsement of the enterprise. Such being the relation of the parties to each other and to the subject-matter of their negotiations, a very delicate sense of propriety might have required of plaintiff a full disclosure to the society of his financial interest in the enterprise, but he was under no legal obligation to make such disclosure. The sphere of operation of municipal law is not so enlarged as to include mere questions of propriety, but is limited to questions affecting substantial material rights of persons or of property. No such case is presented by this record. The undisputed evidence shows that the medical society incurred no obligation of any kind by its indorsement, and had no financial interest in the subject-matter of the contract.

None of the many cases cited in appellant's brief sustain his contention that the contract sued on by plaintiff is unenforceable, because plaintiff's financial interest in the subject-matter of the contract was not disclosed to the medical society. In all of the cited cases the contract held unenforceable because it was "an agreement to receive a secret profit to induce third persons, having confidence in him (the plaintiff) and believing him to be financially disinterested, to do some

act by which he would receive some financial profit," the third persons so influenced either incurred liability by their act, or were real parties in interest in the subject-matter of the contract. As illustrative of the character of these cases and the extent to which the doctrine is applied, we quote the following from Fletcher on Corporations, vol. 1, p. 277, § 135:

"135. Secret Profits.—In General. As a result of the fiduciary relation or relation of trust and confidence sustained by a promotor, he will not ordinarily be permitted to retain a secret profit made out of his transactions or dealing with, or on behalf of the corporation or corporators.

"By a secret profit is meant such profit as is made without disclosing the same to the real parties in interest in obtaining their express or implied consent thereto."

It is manifest that the rule here announced has no application in the instant case, because the medical society was not a real party in interest, but, on the contrary, had no interest in the contract.

The case of Simon v. Gerlitz, 63 Tex. Civ. App. 172, 133 S. W. 464, largely relied on by appellant to sustain his contention, does not support the proposition that the concealment by plaintiff from the medical society of his interest in the enterprise rendered his agreement with the defendant unenforceable. The party from whom the facts were concealed in the cited case had a real interest in the subject-matter of the contract, and fraud was practiced upon him by the plaintiff to induce him to make the contract by which the defendant in the case had received the profits in which plaintiff had a secret interest. Of course the fraud of plaintiff in that case was condemned by the court, and his contract held unenforceable. In that case the court further held that, the suit being one to enforce the contract, and not a suit by a joint owner to recover an undivided interest in specific property, the plaintiff could not recover. The jury in this case found upon sufficient evidence that the contract between plaintiff and defendant did not include an agreement that plaintiff should conceal from the medical society his interest in the profits of the enterprise. Under this finding, appellant's attack upon the contract must fail, and, if the plaintiff's suit is considered one to enforce the contract, his failure to inform the medical society of his personal interest in the enterprise could not defeat his claim against defendant. McConnon & Co. v. Marshall (Tex. Civ. App.) 280 S. W. 323.

But it is well settled by our decisions that suits of this character are not to be regarded as suits to enforce the illegal contract. In the case of Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787, the court says: "In these cases, and in many similar ones which need not be cited, it is held that the cause of action is not dependent upon the

illegal transaction. When the plaintiff shows that the defendant has received of a third party money for his use, the law from the naked fact implying a promise, the case is made out without going into the illegal transaction, and the defendant will not be permitted to set up the illegality of the original contract in order to defeat a recovery."

This holding is quoted and approved by our Supreme Court in Hartford Fire Insurance Co. v. City of Houston, 102 Tex. 319, 116 S. W. 36, and has been followed in many opinions by our Courts of Civil Appeals.

■ Appellant next assails that portion of the judgment awarding appellee one-half of the commissions received by appellant for the sale to Don Hall of the land he thereafter conveyed to the Medical Arts Building Company for the location of the building, and one-half of the commissions received by appellant from the Adair Realty & Trust Company for securing for that company the contract to loan the money necessary for carrying out the enterprise, on the ground that appellee, being the president of the building company at the time of the conveyance of the land to the company, and at the time the contract with the Adair Company was made, any secret agreement by which appellee would receive a portion of the commissions earned by appellant in effecting the sale of the land and obtaining the loan contract was contrary to public policy and unenforceable.

The undisputed evidence shows that there was no agreement to conceal, and no concealment from any one having any interest in the Medical Arts Building Company, that appellee had an interest in these commissions. The undisputed evidence further shows that the building company was created by and for Don Hall, to be used by him in carrying out the enterprise. He testified: "The consideration of ten thousand dollars recited in the deed (from Hall to the Building Company) was not the actual consideration; the actual consideration was the entire stock of the Medical Arts Building Company. That was conveyed to me and *I became the owner of the entire capital stock of the company.* There are ten doctors that are Directors in the company and they hold a qualifying share each. Each share is of the par value of one hundred dollars. With the exception of that ten shares and the one hundred shares that I hold to await the adjustment of this matter, I own the balance of the stock at this time. In the final agreement between myself and Dr. Hoover it is stated that I buy from him all his right, title, equity and interest in and to 2,900 shares of the capital stock of the Houston Medical Arts Building Company; as I have already testified, *I paid for the entire stock with this land on which the building is constructed. Dr. Hoover never paid any money for any of the stock, nor conveyed any property* in payment of any of said stock."

When considered in the light of the facts shown by the undisputed testimony, there is nothing in the agreement between appellant and appellee which is violative of public policy or of good morals, Don Hall testified that he knew of appellant's receiving a commission from the owners of the property conveyed to him and subsequently conveyed by him to his creature, the building company, and also knew of the commissions paid appellant by the Adair Company, and was told by appellant that appellee had a one-half interest in appellant's profits as a promoter of the enterprise.

■ Being the sole owner of the property and the only person who could have complained of these commissions, he made no complaint at the time and makes none now, and it certainly does not lie in appellant's mouth to make such complaint. Bates v. Dunn (Tex. Civ. App.) 293 S. W. 231.

■■ The trial court did not err in refusing to submit to the jury any of the special issues requested by the appellant. The issue submitted by the court was as follows:

"(1) Did defendant agree with plaintiff that in consideration of services to be rendered by plaintiff, plaintiff should receive one-half of all profits or commissions which would accrue to defendant in the carrying out of the Medical Arts Building enterprise?" To this issue the jury answered "Yes."

Defendant requested the submission of the following issues, which were refused:

"No. 1. Was it agreed that the plaintiff should receive as compensation for his services anything except $10,000.00 in stock in the corporation to be formed and one-half the commission accruing on the sale of real estate less the expenses?

"No. 2. Did the defendant promise to pay the plaintiff $10,000.00 in stock and one-half the sale of real estate less expenses incurred?

"No. 3. If you have answered the foregoing special issue No. 2 in the affirmative, and only in that event, you will answer: Did the defendant promise to pay the plaintiff any other compensation either in money or in property?"

None of these requested issues present any special defense, and none of them were pleaded by appellant; his answer consisting only of a general demurrer and general denial. The requested issues only negative a part of plaintiff's alleged contract, which was found by the jury to have been the contract made by the parties. It certainly cannot be the law that in submitting a case to a jury on special issues the trial court can be required to submit affirmatively every material conflict in the evidence.

The finding of the jury that "the defendant agreed with the plaintiff that in consideration of the services to be rendered by plaintiff, plaintiff should receive one-half of all profits or commissions which would accrue to the defendant in the carrying out of

the Medical Arts Building enterprise," is a positive and unequivocal finding against the issues requested by the defendant, and it is inconceivable that a jury of any degree of intelligence would directly contradict themselves by giving an affirmative answer to the requested issues. It seems to us that it would be farcical to conduct judicial proceedings on the assumption that a jury might so contradict itself.

■ When a case is submitted by a general charge in which the jury is not requested to find the particular determining fact issues in the case it is both proper and necessary that the attention of the jury should be directed to the conflicting claim of the parties raised by the evidence, and informed that, if they find that plaintiff's claim is supported by the evidence, they should return a verdict for plaintiff, but, if they find defendant's claim is sustained by the evidence, the verdict should be in his favor.

The reason for such affirmative submission of the conflicting claims of the parties arising upon the evidence does not exist when a jury is asked to find a particular fact without being informed as to the relevancy of such fact to the claim of either party, and we know of no rule which requires a trial court to submit the same special issue of fact to a jury both affirmatively and negatively, and such double submission of the same fact would have been the effect of the court's charge in this case if the issues requested by the defendant had been submitted. Galveston, H. & S. A. Ry. Co. v. Mallott (Tex. Civ. App.) 6 S.W.(2d) 437; Wichita Valley Ry. Co. v. Williams (Tex. Civ. App.) 6 S.W.(2d) 439.

Common sense, which is or should be the basis of every rule of law, forbids the application in this case of the rule invoked by appellant. The application of the rule invoked, in cases submitted on special issues, should be, and, as we interpret the decisions of our Supreme Court, can only be made when a defendant specially pleads a fact or group of facts which, if true, constitute an independent affirmative defense to the plaintiff's claim, and the rule has no application where the evidential fact issue requested to be submitted only negatives the issue submitted by the charge of the court. Missouri, K. & T. Ry. Co. v. Parker, 20 Tex. Civ. App. 470, 49 S. W. 717, 50 S. W. 606; Texas & P. Ry. Co. v. Hagood, 21 Tex. Civ. App. 442, 52 S. W. 574; Texas Trunk Ry. Co. v. Ayres, 83 Tex. 268, 18 S. W. 684; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517.

In discussing this question, the Court of Civil Appeals for the Eleventh District, in an opinion by Chief Justice Hickman, says: "Article 2190, R. S. 1925, provides for the submission of all issues made by the pleadings and evidence when a case is submitted upon special issues. Under such practice,

it is the duty of the jury to determine the facts without reference to the consequences of the answers to the special issues. Whatever may have been the practical effect of the enactment of the law relative to the submission of special issues, one of its purposes was evidently to simplify the method of charging the jury, and thereby lessen the probability of errors in the charge of the court. This purpose would be subverted rather than served by requiring a dual submission of every fact issue." Wichita Valley Ry. Co. v. Williams, 6 S.W.(2d) 439.

This statement of the rule has our entire approval, and is, we think, a conclusive answer to appellant's contention.

■ There is no merit in appellant's further contention that the trial court was not authorized to render judgment in appellee's favor for one-half of the 10 shares of stock held by Don Hall, and a half interest in the $30,000 note executed by Hall in payment of compensation due by him to defendant for services performed in carrying out their joint enterprise. The judgment is not against Hall. nor the present holder of the $30,000 note, neither of whom were parties to the suit, but the fact that these parties are not bound by the judgment does not defeat appellee's right to have his title to a one-half interest in this property as against the appellant determined in this suit. Hall in his testimony admits plaintiff's interest in the stock and note, and the present holder of the nonnegotiable note is a nonresident and could not have been subjected to the jurisdiction of the court by personal citation. There could be no injury to defendant in having his and plaintiff's rights in the property adjudicated in this suit, and the finality of that adjudication is not affected by the fact that it is not binding upon the present holders of the property.

It is, we think, unnecessary to discuss the remaining propositions presented in appellant's brief.

For the reasons above given, we think the judgment should be affirmed, and it has been so ordered.

Affirmed.