## CROSS et al. v. WHITE et al.

### No. 4830.

Court of Civil Appeals of Texas. Amarillo.

Dec. 13, 1937.

Rehearing Denied Jan. 17, 1938.

Wilson Cowen, of Dalhart, and Wm. L. Darrah and Adkins, Pipkin, Madden & Keffer, all of Amarillo, for appellants.

B. N. Richards, of Dalhart, for appellees.

STOKES, Justice.

Appellee W. A. Colt, Jr., filed this suit against appellee H. L. White and appellants B. M. Addington and W. A. Cross upon a number of checks that had been given to him and others by appellee H. L. White for the purchase price of certain cattle purchased by White in the state of New Mexico; the checks aggregating $2,475. He alleged upon information and belief that, in purchasing all of the cattle for which the checks were given, White was acting on behalf of and as agent for the appellants Cross and Addington, as well as for himself, and that prior to the purchase of the cattle, Cross and Addington had entered into some kind of contract with White whereby they instructed and directed him to go into New Mexico and buy cattle for them, and prayed for judgment against all of the defendants, jointly and severally.

Appellee White answered by admitting the execution and delivery of the checks and alleged a cross-action against appellants Cross and Addington, to the effect that on or about the 24th of August, 1935, they entered into a verbal contract with him, by the terms of which it was agreed that White would go into New Mexico, around Carrizozo, Ancho, Alamogordo, and other places, and buy cattle for. appellants and ship them to appellants at Dalhart, where appellants were engaged in operating a cattle and stock brokerage and sales business. He alleged they agreed to pay him 50 cents per head for all cattle purchased by him and shipped to them at Dalhart or such other places as they may designate, and that they were also to pay him $10 per week for incidental expenses that may be

incurred by him in the enterprise. He further alleged that, under the terms of the contract, he was to give to the sellers his personal checks for the cattle so purchased, such checks to be drawn on the Citizens State Bank of Dalhart, and that appellants agreed to place in the bank to his credit the proceeds of the sale of the cattle or other moneys with which to pay the checks issued by him in carrying out the enterprise, and prayed for judgment over against appellants Cross and Addington for any amount for which judgment may be rendered against him in favor of the plaintiff W. A. Colt, Jr.

The record shows that White went to the communities named, and between August and December, 1935, purchased a large number of cattle amounting in value approximately to $89,000, and shipped most of them to appellants at Dalhart and some to Kansas City, Mo., and Los Angeles, Cal., which he claimed was under instructions and directions of appellants.

About the date named, appellee White and appellants Cross and Addington executed a note to the Citizens State Bank of Dalhart in the sum of $500, the proceeds of which were placed to the credit of appellee H. L. White, and were used by him as a checking account to pay for the cattle, and as they were sold the proceeds would be deposited by appellants in this account. In the late fall of 1935, the price of cattle declined and White's account in the bank became depleted and finally completely exhausted before White had given the checks sued on in this case, and when they were presented to the bank payment was declined and the checks returned to the payees. One of the checks was given to appellee W. A. Colt, Jr., for thirty-one head of cattle sold to White by him in the sum of $752.50, and the other checks sued on were given by White to other parties who assigned them to Colt.

Appellants Cross and Addington answered by general demurrer, a number of special exceptions, and general denial. They specially denied they had ever employed White to buy cattle for them, or had appointed him as their agent, or that they were responsible in any respect for any of the purchases by White or obligations created by him in the purchase of the cattle.

It appears that on or about the 24th of August, 1935, a conversation took place between White, Addington, and Cross, which resulted in the execution of the note to the bank and the deposit of the proceeds to White's credit. It is the theory of appellants that the purport of the conversation was that White was out of employment and, in order to assist him in getting started in the line of work in which he had had large experience, they agreed to sign his note as sureties and through their sales service at Dalhart handle such cattle as he should purchase, and deposit the proceeds, less usual commissions, to White's credit in the Citizens State Bank.

The case was tried before a jury and submitted upon special issues, in answer to which the jury found in substance that appellants, on the 24th of August, 1935, entered into a contract with White, by the terms of which it was agreed that White would go into New Mexico and buy cattle for appellants and ship them to appellants at Dalhart or such other places as appellants should direct; that White would give his check in payment for the cattle; that appellants would place the proceeds of the sale of the cattle to White's credit in the Citizens State Bank, with which to pay the checks issued by him in the purchase of the cattle; that appellants agreed with White that they would place money to his credit in the bank with which to pay the checks; that White did purchase cattle in New Mexico and ship them to appellants at Dalhart or other points at Addington's request; and that White sold and disposed of some of the cattle with the knowledge and consent of appellants.

It seems that Colt elected to take his judgment against appellee White and abandoned his cause of action against appellants. The jury returned a general verdict in his favor against White for the amount sued for, and the court rendered judgment accordingly. The case as made between White and appellants was submitted to the jury upon special issues and, based upon the answers returned by the jury, judgment was rendered in favor of White over against appellants for a like amount, conditioned, however, that execution should issue against him for such an amount only as he may pay or be required to pay upon the judgment in favor of Colt.

■■ Under appropriate assignments of error and propositions, appellants complain of the action of the trial court in overruling their general demurrer to the cross-action of appellee White, and stren-

uously urge the case should be reversed on account of such error. The contention is based upon the assumption that the cross-petition of White shows upon its face an entire lack of mutuality and absence of consideration to them for the obligations asserted, and that the cause of action was essentially one of accounting, and that there is no connection between the obligations alleged and the relief prayed for by White, which was, in effect, that appellants be held obligated to pay the checks constituting the basis of the suit. These assignments and propositions are based upon the assumption that the petition is not sufficient to show that White was acting for appellants in any representative capacity so as to obligate them to pay any checks issued by him or reimburse him for any of his expenditures. We do not agree with appellants in this contention, and these assignments are overruled. In addition to the allegations of appellee Colt concerning the agency of White for appellants, White in his cross-action alleged that he purchased the cattle and gave the checks sued upon under and pursuant to his agreement with appellants, and as their agent, and that he caused the cattle to be shipped to them at Dalhart or other places under their orders and instructions. He alleged that the cattle were received by them, and that he never received any of the cattle or the proceeds therefrom, except in his capacity as the agent of appellants. If White was employed by appellants as their agent to go into New Mexico and buy cattle for them, they were bound to indemnify him for the necessary expenditures he may have made while in the discharge of his duties. It is elementary that the principal is bound, not only to those in favor of whom the agent may create liabilities, but also to the agent himself for such expenditures and liabilities as may be created by the agent within the scope of his authority as agent, and we think the allegations of appellee White in his cross-action are amply sufficient to bring the case within that category.

Under their second assignment of error appellants contend the judgment is contrary to law because it necessarily is based upon the jury's answers to special issues which are insufficient to entitle appellee White to a judgment in the absence of findings that the identical checks sued upon were given by him in the purchase of cattle for appellants, and that they did not place the proceeds of the sale of these identical cattle to White's account, and a finding as to what the proceeds of these identical cattle were. This contention is likewise based upon the assumption that the pleadings and evidence were not sufficient to establish the theory of appellee White that in purchasing the cattle for which the checks were given, he was acting as agent for appellants. Other assignments of error assert that the overwhelming preponderance of the evidence showed that White was acting purely in his own behalf, and the court should have instructed the jury to find in their favor, which constitute substantially the same contention and involve the question of whether or not the evidence is sufficient to warrant the findings of the jury to the effect that, in purchasing the cattle for which the checks were given, White was acting as the agent of appellants and not engaged in business for himself.

White testified that, when he approached appellants with the request that they enter into some kind of an arrangement whereby he could purchase cattle, he suggested that they furnish the money for the purchase of cattle by him and that the profits from their sale be divided equally between them. He said that this proposition was declined, but that it was finally agreed that appellants would arrange to finance the operations and pay him 50 cents per head for all cattle purchased by him and shipped to them or other places under their directions, and also furnish him as much as $10 per week to defray his incidental expenses, and provide the money with which to pay for the cattle. He said that appellants went to the bank and made the arrangements for the loan of $500 without his knowledge, and the next day they procured him to sign the note with them. He testified that the proceeds of the note were placed in the bank in his name for convenience, but that the account belonged to appellants. His testimony is amply sufficient, if true, to establish his agency for appellants.

On the other hand, appellants Addington and Cross denied they had ever employed White as their agent, but testified in effect that they signed his note at the bank merely as an accommodation to him, and in order to enable him to get started in the business of buying and sell-

ing cattle. They said they did not give him any directions as to where the cattle should be shipped, and completely refuted the testimony of White in that respect, thus making a sharp conflict in the testimony and presenting issues of fact necessary for the jury to determine.

The jury found against appellants and in favor of White on these controverted issues and, there being ample evidence to support their findings, it necessarily follows that these contentions of appellants must be overruled. The effect of the jury's findings was to establish the fact that, in purchasing the cattle and shipping them to Dalhart and other places, White was not acting for himself, but was acting as agent and representative of appellants. The judgment follows those findings, and the agency of White being thus established and based upon ample evidence, the questions of whether or not the checks sued upon in this case were given in the purchase of specific cattle or that the proceeds of the cattle purchased by the checks in suit, were deposited to White's account in the bank, or that appellants ever received the cattle for which the checks were given, become immaterial. There was no contention that White had misappropriated any of the funds or that he had converted any of the cattle purchased by him or the proceeds thereof, nor that the cattle purchased by the checks in suit were handled by White in any manner different from any other cattle purchased by him during the period of his alleged agency.

Under their eleventh proposition appellants make the contention that the court committed reversible error in refusing to submit special issue No. 1 requested by them, which sought a finding of the jury as to whether or not appellants entered into an agreement with appellee White whereby he was to go into New Mexico and buy cattle for himself. Appellants allege that, in purchasing the cattle, White was acting purely on his own account. Their theory was that, if a contract resulted from the conversation of August 24, 1935, it was to the effect that White would go into New Mexico and purchase cattle for himself. We are not advised as to why it would be necessary for White to have a contract with appellants in order to enable him to go into New Mexico and buy cattle for himself. Appellants make this contention upon the theory that they pleaded these facts and

were entitled to this special issue as a defense to White's cross-action. It is true that, if their version of the conversation could be said to have resulted in a contract, the terms of which were materially different from those claimed by White, and which would necessarily have destroyed the basis of his contention as to what the contract was, appellants would have been entitled to a finding from the jury as to whether or not the conversation resulted in the formation of the contract contended for by them. Montrief & Montrief v. Bragg et al., Tex.Com.App., 2 S.W.2d 276; San Jacinto Trust Co. v. Goodwin, Tex.Civ.App., 88 S.W.2d 525.

This case, however, does not fall within the rule invoked by the principle of law just announced for the reason that the issue requested by appellants involved nothing more than an evidentiary matter. The ultimate issue between the parties on the question involved, in reality was whether or not the conversation resulted in a contract. If it did, and the conflicts in the testimony presented an issue as to its terms, then the ultimate issue would be which of the two contentions as to those terms was the correct one. In that event, it would be proper and necessary to submit both contentions to the jury for their determination. As we interpret the conversation, however, whether White's version or appellants' version of it be taken, it could not have resulted in but one contract, and the ultimate issue was whether or not it resulted in any contract whatever. White's testimony was to the effect that the conversation which he had with appellants effected an agreement and contract, based upon adequate consideration, by which he would go into New Mexico, buy cattle from various and sundry parties, and ship them either to appellants at Dalhart or to other parties as directed by them, and that appellants would provide the funds for his use in purchasing the cattle. He said it was agreed between them that they would pay him 50 cents per head for his services in purchasing the cattle, and allow him $10 per week for his incidental expenses. According to his version of the conversation, when he purchased the cattle and placed them in transit, consigned to appellants at Dalhart or such other places as they may designate, he had performed his duty to them. Appellants' version of the conversation was that it did not result in any contract whatever. They alleged and testified that

White was out of employment, and that he approached them with the proposition that they furnish the money for him to buy cattle which he would ship to them at Dalhart, and when they were sold the profits would be equally divided between them. They said that this proposition was declined by them, but that in a desire to assist White in establishing himself in the enterprise of buying and selling cattle, and at his request, they signed his note for his accommodation and as his sureties merely to provide him with funds with which to get started in the business of buying and selling cattle. They said that the purport of the conversation was that, after they had provided White with the funds upon which to operate, he would go to various places in New Mexico, buy cattle for himself, and upon his own account, and consign them to appellants at Dalhart to be sold for White's account. Obviously, if appellants' version of the conversation was correct, no contract whatever resulted from it. Even if appellants had furnished the means by which White ·could procure funds with which to enter the cattle business, it would not necessarily follow that ,he would have to have a contract with them before he would be permitted to go into New Mexico and buy cattle for himself. It is only when negotiations such as these are susceptible of being construed into a contract different from that asserted by the plaintiff that the trial court is required to submit such alternatives as those for which appellants here contend. It has never been the law that the same question must be submitted to the jury in both an affirmative and a negative manner.

▮▮ The rule is well recognized that all issues of fact raised by the evidence under proper pleadings should go to the jury, but the rule has reference to issues of fact and not to evidentiary matters going to make up the ultimate issues which control the judgment of the court. Properly applied, the rule contended for by appellants in cases submitted on special issues can be invoked only when the defendant pleads facts which, if true, would constitute an independent defense to the claim made by the plaintiff. It does not apply when the only effect of the fact issue sought to be submitted by ·the defendant is to negative an issue submitted by the court in the main charge. Missouri, K. & T. R. Co. v. Parker, 20 Tex.Civ.App. 470, 49 S.W. 717, 50 S.W. 606; Texas & P. R. Co. v. Hagood, 21 Tex.Civ.App. 442, 52 S.W. 574; Hoover v. Hamilton, Tex.Civ.App., 14 S. W.2d 935.

The special issue here contended for by appellants is as follows: "Do you find from a preponderance of the evidence that defendant, W. A. Cross, and B. M. Addington entered intó an agreement with the defendant White whereby the defendant, H. L. White, was to go into New Mexico and buy cattle for himself?"

If this special issue had been submitted to the jury and answered in the affirmative, it would not have established any ultimate fact. From its affirmative answer, the conclusion could not have been reached that, in the conversation to which it refers, any kind of a contract had been entered into between the parties. It only would have established the fact that, in the conversation between White and appellants, it was agreed that White was privileged to go into New Mexico and buy cattle for himself, a thing he could have done without any agreement or contract with appellants. The most that could be said of the effect of a finding of the jury on the special issue requested is that it would have established the fact that such a matter was discussed in the conversation. The court submitted to the jury special issue No. 1 of the main charge which required the jury to find whether or not appellants entered into a verbal contract with White to the effect that White would go into New Mexico and buy cattle for defendants Cross and Addington. This special issue was answered in the affirmative, and an affirmative answer to the special issue requested by appellants would not have changed the effect of the answer of the jury to·the special issue submitted by the court. It was said by the Eastland Court of Civil Appeals in Wichita Valley Ry. Co. v. Williams, 6 S.W.2d 439, 441: "Whatever may have been the practical effect of the enactment of the law relative to the submission of special issues, one of its purposes was evidently to simplify the method of charging the jury, and thereby lessen the probability of errors in the charge of the court. This purpose would be subverted rather than served by requiring a dual submission of every fact issue."

This statement of the rule was approved by the Galveston Court of Civil Appeals in Hoover v. Hamilton, supra, and we think it is a correct statement of the law.

In Texas & P. R. Co. v. Dickey, 70 S. W.2d 614, 615, Justice Alexander, speak-

ing for the Waco Court of Civil Appeals, said: "The defendant requested the court to submit to the jury a certain specially requested issue inquiring whether or not the plaintiff received an injury to the brain, and another inquiring whether or not the plaintiff sustained all of the injuries of which he complained. These charges were refused and the rulings of the court thereon are assigned as error. Such charges presented mere evidentiary issues, for the jury's answers thereto would not have aided the court in determining what judgment should be entered in the case." (Citing authorities.)

As we see it, the only purpose that could have been served by eliciting from the jury an answer to the requested special issue would have been to establish a basis for an argument by appellants as to the purport and effect of the conversation from which, White alleged, the contract resulted. These matters were sharply controverted; White contending the conversation was such as to result in a contract, and appellants contending it was not. The question of whether or not it did result in a contract between the parties was submitted to the jury by the court in the main charge and the ultimate question of whether or not the conversation resulted in a contract was determined by the jury in favor of appellee White. We think the answer of the jury determined the ultimate question involved and that the court did not err in refusing to submit to the jury appellants' specially requested issue No. 1.

 Under their assignments of error Nos. 20 to 26, inclusive, appellants contend that the overwhelming preponderance of the evidence was in their favor, and that special issues Nos. 1, 2, 4, 5, 7, and 8 in the court's main charge, and special issue No. 3, given by the court at the request of appellee White, are unsupported by the evidence. We think the evidence was amply sufficient to support the findings of the jury on these special issues. They all involved terms of the alleged contract White claimed he had with appellants which resulted from the conversation of August 24, 1935. White testified fully in support of the affirmative of the questions presented to the jury by each of the special issues mentioned, and appellants Cross and Addington completely refuted the version of the contract detailed by White. Much other evidence was introduced by both parties; that introduced by White tending to support his contention that a contract was made between them, and that produced by appellants tending to support their contention that no contract resulted from the conversation. Many circumstances were detailed, the bank account and bills of sale, checks, deposit slips, and many other items and actions of the parties connected with this controversy were shown. From all this evidence the jury concluded that the purport of the conversation referred to resulted in a contract such as we have detailed. The evidence being conflicting on all these questions, the issues properly were submitted to the jury and, there being in the record evidence to support their findings, and the court having rendered judgment in accordance with them, we are without authority to disturb the judgment. Even if we should be of the opinion that the preponderance of the evidence was in favor of appellants' contention, we would be precluded by the findings of the jury from interfering with the judgment since such matters were based upon facts that properly were determined by the verdict.

 Further contentions of appellants are that even if a contract resulted from the conversation referred to and White was acting as their agent in purchasing the cattle, the testimony showed he had repudiated, destroyed, and abandoned his agency by the manner in which he dealt with cattle shipped to Kansas City and Los Angeles, and by his actions in selling some of them to other parties. We do not agree with appellants in these contentions. According to the evidence adduced by White, his authority under the contract was sufficiently comprehensive to include these acts and dealings. Furthermore, White testified that in shipping the cattle to Kansas City and Los Angeles and in making sale of some of them to other parties, he acted under specific instructions and direction of appellants, and the jury so found. These assignments are, therefore, overruled.

 Under their proposition 6-a appellants contend the judgment is excessive, at least to the extent of $600. This contention is based upon testimony to the effect that White retained for his own benefit money totaling the amount mentioned. No contention is made that the money was retained with any evil design, and appellants did not set up the same as an offset to any judgment which White may procure against them, or pray for any judgment against him for such amounts. The fact of his retaining these amounts and ap-

propriating them to his own use is presented here only in support of the contention that if White ever had a contract with appellants under which he was to act as their agent in buying the cattle he had repudiated such agency by the appropriation of the amounts of money alleged. In the state of the record before us, we do not agree with this contention. White's actions in that matter are fully explained by his testimony, and we find nothing in any of the testimony which supports even a suggestion that White ever intended to abandon the relationship or did anything which gave evidence of his purpose to do so.

Under their eighth proposition appellants contend that special issue No. 2, submitted to the jury in the court's main charge, was duplicitous and embraced at least two issues that were susceptible of different answers. That issue sought from the jury a finding of whether or not it was agreed in the conversation referred to that White would ship cattle bought by him to appellants at Dalhart, and to such other places as they should direct. The contention is that the matters encompassed by this special issue should have been submitted in two issues; one inquiring as to whether or not White was to ship cattle to Dalhart, and the other as to whether or not he was to ship cattle to other places. The controversy in the case concerned the question of whether or not White and appellants had made a contract under which White would purchase and ship cattle. There was no issue made either in the pleadings or the evidence which in any manner concerned the markets or points to which White was to ship the cattle purchased by him. He claimed he had a contract with them to act as their agent in purchasing and shipping cattle for them. The places to which he shipped the cattle were not material as long as he shipped them under the direction of appellants. The special issue submitted the question of whether or not such an agreement was made between them, and in our opinion was properly submitted. This contention is therefore overruled.

A number of assignments and propositions presented by appellants complain of the action of the court in refusing to submit special issues requested by them. In our opinion the nature of the special issues requested involved evidentiary matters and were not proper matters to be submitted to the jury. Their spe-

cially requested issue No. 2 sought a finding as to whether or not appellants signed the $500 note at the Citizens State Bank as an accommodation to appellee White.

Special issue No. 3, requested by them sought a finding as to whether or not White gave checks upon his own credit and responsibility, and the others were of a similar nature. It is clear these matters were proper for the jury to consider upon the main issue in the case of whether or not a contract existed between them such as was alleged by White, but they were evidentiary in their nature, and, in our opinion, the action of the court in refusing to submit them to the jury was proper. These assignments are therefore overruled.

We have carefully examined all of the assignments of error and propositions presented in appellants' brief and, believing that no reversible error is shown by any of them, the judgment of the trial court is in all respects affirmed.